Jason R. Searcy
SBN 17953500
Joshua P. Searcy
SBN 24053468
Callan C. Searcy
SBN 24075523
*Searcy & Searcy, P.C.*
PO Box 3929
Longview, Texas 75606
Tel. (903) 757-3399
Fax. (903) 757-9559
Counsel for Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PRIMERA ENERGY, LLC** | § | **CASE NO. 15-51396** |
| **21022 Gathering Oak #2101** | § | |
| **San Antonio, Texas 78260** | § | |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

## DISCLOSURE STATEMENT
## WITH RESPECT TO CHAPTER 11 TRUSTEE'S PROPOSED
## CHAPTER 11 PLAN OF REORGANIZATION

Jason R. Searcy, Chapter 11 Trustee (the "Trustee") for Primera Energy, LLC (the "Debtor"), submits this **DISCLOSURE STATEMENT** (the "Disclosure Statement") in connection with the solicitation of acceptances of the Trustee's proposed **PLAN OF REORGANIZATION** that is attached hereto as **Exhibit "A"** (the "Plan").

### 1.

### NOTICE TO HOLDERS OF CLAIMS AND EQUITY INTERESTS

The purpose of this Disclosure Statement is to provide you, as the holder of a claim against the Debtor, or as a shareholder of, partner in, or owner of an equity interest in the Debtor, with information to enable you to make a reasonably informed decision on the Plan before exercising your

right to accept or reject the Plan.

You should read all of this Disclosure Statement before voting on the Plan. You are urged to consult with your own financial and other advisors in deciding whether to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or their businesses other than the information contained in this Disclosure Statement.

Under Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the record date for determining which holders of claims and equity interests may vote on the Plan is the date on which the Bankruptcy Court enters its order approving this Disclosure Statement (the "Voting Record Date"). EFFECTIVENESS OF THE PLAN UNDER SECTION 1129(a)(7) OF THE BANKRUPTCY REFORM ACT OF 1978, AS AMENDED (THE "BANKRUPTCY CODE"), REQUIRES THE APPROVAL OF THE PLAN BY THE HOLDERS OF AT LEAST TWO-THIRDS IN AMOUNT AND MORE THAN HALF IN NUMBER OF ALLOWED CLAIMS VOTING ON THE PLAN FOR EACH OF THE IMPAIRED CLASSES, OR A FINDING BY THE BANKRUPTCY COURT THAT THE PLAN IS FAIR AND EQUITABLE AS TO THAT CLASS.

After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed ballot; then return the ballot to the Trustee, at the address set forth on the ballot, by **5:00 p.m., central standard time, on or before_____**. You may also return your ballot by courier or fax by following the instructions on the ballot. **ANY BALLOTS RECEIVED BY THE TRUSTEE *AFTER* 5:00 P.M., CENTRAL TIME, ON_____, WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

The Bankruptcy Court has entered an order fixing_____**, central standard time,** in the Courtroom of the United States Bankruptcy Court, San Antonio, Texas,, as the date, time and place for a hearing on confirmation of the Plan (the "Confirmation Hearing"), and fixing_____ **_____ by 5:00 p.m., central standard time,** as the time by which all objections to confirmation of the Plan must be filed with the Bankruptcy Court and served on Trustee.

Unless otherwise provided in the Plan, the closing of the transactions described in the Plan will occur on the Effective Date as defined in the Plan, unless the effectiveness of the Confirmation Order has been stayed or vacated by a court of appropriate jurisdiction, in which case this Effective Date shall be the later of the 30th business day after the entry of the Confirmation Order or such date thereafter when any stay of the effectiveness of the Confirmation Order has expired or otherwise terminated (the "Effective Date" of the Plan).

\* \* \* \* \* \* \*

☞ **About this Disclosure Statement:**

- The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement. Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

- Unless the context requires otherwise: (1) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (2) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (3) "including" means "including, without limitation".

- Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first or most prominently appear within this Disclosure Statement. An index to those defined terms is included for your convenience at the front of this Disclosure Statement immediately after the table of contents. Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan.

- You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of claims or interests.

- Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have been accurate and financial projections that may be materially different from actual future experiences.

## 2.

## OVERVIEW OF THE PLAN

The Plan provides for the orderly liquidation of the assets of the Debtor and the payment of claims against the Debtor to the extent funds are available to do so in the manner and priority set out.

This overview is qualified by reference to the Plan, a copy of which is attached as **Exhibit "A"**, and by the additional information included in this Disclosure Statement.

## A.    Debt and Equity

The Trustee believes that the Plan provides for (1) the treatment of all classes of claims that is in the best interests of creditors of the Debtor's estate and is fair and equitable to those creditors and (2) the fair and equitable treatment of its equity holders. The Trustee believes that the value of the Debtor's assets and its enterprise value are less than gross amount of the claims likely to be allowed against it. Accordingly, the Trustee does not believe that the equity holders will receive any distribution or value under the Plan.

## B.    Classification and Treatment Summary

Administrative expenses are not classified but are required to be paid by the Debtor. These expenses are expected to be approximately $400,000.

The claim estimates in the following table are based on proofs of claim filed and those claims have not been reviewed for validity or accuracy. All filed claims, whether ultimately allowed or not, are included for estimation purposes but the right to object to any claim or lien is preserved.

The following is a summary of the classification of claims and interests, and their treatment under the Plan.

| CLASSIFICATION | TREATMENT |
|---|---|
| **CLASS 1**<br>***Priority Claims***<br>Total Estimated Amount: $78,413 | *Unimpaired*<br><br>Will receive payment in full on or before the Effective Date<br>*Estimated Recovery:* 100% |
| **CLASS 2**<br>***Ad Valorem Tax Claims***<br>Total Estimated Amount: $98,580 | *Unimpaired*<br><br>The Class 2 Claims of the various taxing entities to whom ad valorem taxes are owed by Debtor shall retain their respective liens against Debtor's Property until satisfaction of their Allowed Secured Claim or Claims.<br>*Estimated Recovery:* 100% |

| CLASS 3<br>***Allowed Secured Claims of Holders of Valid Mineral Liens (McMullen County, Texas)***<br><br>Total Estimated Amount: $3,151,103 | *Impaired*<br><br>Collateral will or has been sold, valid liens to attach to proceeds and divided pro-rata; unpaid balance to be Class 6 Claims<br><br>*Estimated Recovery:* 20% |
|---|---|
| CLASS 4<br>***Allowed Secured Claims of Valid Mineral Liens (Gonzales County)***<br><br>Total Estimated Amount: $3,077,430 | *Impaired*<br><br>Collateral will or has been sold, valid liens to attach to proceeds and divided pro-rata; unpaid balance to be Class 6 Claims<br><br>*Estimated Recovery:* 29% |
| CLASS 5<br><br>**Assumed Executory Contracts**<br><br>Total Estimated Amount: None.<br>(It is anticipated the purchasers of the Debtor's properties will pay any amounts required to cure any assumed Joint Operating Agreements) | *Unimpaired*<br><br>Will receive payment from third party purchasers of Debtor's properties assuming the Joint Operating Agreements<br><br>*Estimated Recovery:* 100% |
| CLASS 6<br><br>**General Unsecured Claims**<br><br>Total Estimated Amount: $1,073,485 (includes anticipated deficiencies from Mineral Lien Claims) | *Impaired*<br><br>Will be paid pro-rata from the proceeds of Debtor's properties, assets and recoveries after payment in full to classes 1-5 and unclassified claims.<br><br>*Estimated Recovery:* 1% |

| CLASS 7 | Impaired |
|---|---|
| **Investor Claims**<br><br>Total Estimated Amount: $18,108,312 | Will receive nothing unless Classes 1-6 are paid in full.<br><br>*Estimated Recovery: 0* |
| **CLASS 7**<br><br>**Interest Owners** | Impaired<br><br>Will receive nothing. |

**3.**

## BACKGROUND OF THE CASE

**A.     Background of Debtor**

Debtor is a limited liability company organized under the laws of the State of Texas whose primary assets consists of interests in oil and gas properties.

Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 8, 2015 (the "Petition Date").    Jason R. Searcy was appointed as Chapter 11 Trustee in this case.

**B.     Factors Precipitating Commencement of the Case**

Debtor's business plan involved purchasing oil and gas leases on property and then creating a joint venture to fund the development and operations of each well drilled or to be drilled on those leases. Investors were solicited to pay a percentage of the cost of drilling and completing each well and in return received a comparable interest in the respective joint venture. The purchase price also include a substantial profit for Debtor for each well and investment over and above the actual costs.

Debtor incurred substantial costs and excess expenses due to errors and problems that arose in the drilling and completion of the  Screaming Eagle #3 Well.  These were incurred at the same time as Debtor was attempting to obtain sufficient funds to drill the Buda #1 Well. Debtor's accounting failed to keep incurred and anticipated bills and costs current and the resulting delays caused substantial cash flow issues.

A number of investors became dissatisfied with the operations of Debtor and filed suit

against the Debtor, Brian Alfaro, Alfaro Oil and Gas, Inc. and others asserting, among other claims, fraud, misrepresentation, breach of securities laws and breach of contract. The State Court judge presiding over that action ordered the appointment of a receiver over the assets of the Debtor. As a result, the Debtor filed this proceeding.

## C.    Proceedings in Case

### i.    *Appointment of Trustee.*

On July 14, 2015, Jason R. Searcy accepted his appointment as Chapter 11 Trustee in this proceeding.

### ii.    *Appointment of Official Committee of Unsecured Creditors*

On August 5, 2015, the United States Trustee appointed an Official Unsecured Creditors' Committee consisting of the following members:

Unit Texas Drilling, L.L.C.
7130 South Lewis, Suite 1000
Tulsa, OK 74136
(918) 477-4537
(918) 496-6302 Fax
Contact: Drew Harding
E-mail: drew.harding@unitcorp.com

Baker Hughes Oilfield Operations, Inc.
2929 Allen Parkway, Suite 2100
Houston, TX 77019-2118
(713) 439-8771
(713) 439-8778 Fax
Contact: Christopher J. Ryan
E-mail: christopher.ryan@bakerhughes.com

ArkLaTex Wireline Services, LLC
6913 Westport Ave.
Shreveport, LA 71129
(318) 688-9738
(318) 688-9844 Fax
Contact: Matt Bregman
E-mail: mbregman@awsenergyllc.com

### iii.    Sale of Building.

On the Filing Date the Debtor owned its office building located at 21022 Gathering Oak, San Antonio, Texas. The property was subject to a first lien mortgage held by Karnes County National Bank. Reata Real Estate Services was retained to locate a purchaser for the building and a successful sale was closed which paid Karnes County National Bank in full, paid the ad valorem taxes and other lien claims in full, and returned approximately $90,000 to the estate.

### iv.    Retention of PLS

PLS, Inc. Was retained by the Trustee with Court approval to market the oil and gas properties of the Debtor throughout the oil and gas industry. This has resulted in numerous offers to purchase the property. Trustee will, or has, filed a motion to approve one or more of these sales.

### v.    Retention of Professionals

It is anticipated that each professional retained will file applications for compensation with the Bankruptcy Court to seek approval of reasonable fees and expenses.

Trustee filed an Application seeking to retain Searcy & Searcy & Associates, P.C. to act as bankruptcy counsel. An order approving the employment of the firm as counsel for Trustee was entered on August 14, 2015. Searcy & Searcy, P.C. will file a fee application(s) with the Bankruptcy Court for services rendered and expenses incurred.

Trustee sought to retain Gollob, Morgan and Peddy, P.C. to act as accountants for the Debtor's estate. An order approving the employment of the firm as accountants was entered on December 3, 2015. Gollob, Morgan and Peddy, P.C. will file a fee application(s) with the Bankruptcy Court for additional services rendered and expenses incurred.

Trustee sought to retain Reata Real Estate Services to act as realtor for the Debtor's estate. An order approving the employment of the firm as accountants was entered on September 4, 2015. Reata Real Estate Services has been fully paid for their services.

Trustee filed an Application to retain Traton Engineering, Inc. to act as contract operator for the Debtor's oil and gas properties. An order approving this employment was entered September 4, 2015. Traton Engineering, Inc. is paid in the ordinary course of business and its payment for services is current.

Trustee sought to retain PLS, Inc. to act as marketing agent for the Debtor's estate to locate a purchaser for the Debtor's oil and gas properties. An order approving the employment of the firm was entered on November 24, 2015. PLS, Inc. will be paid a commission from any sale originated by them after court approval.

Trustee sought to retain Sloan, Bagley, Hatcher and Perry as special counsel to pursue certain claims on behalf of the estate. These claims are:

1. Cause No. M-14-0026-0CV-C; 343rd Judicial District Court, McMullen County, Texas; *Primera Energy, LLC vs. Tejas Tubular Products, Inc.*

2. Cause No. 15-148; 216th Judicial District Court, Kendall County, Texas; *Primera Energy, LLC vs. Brennon D. Short*

Orders approving the employment of the firm were entered on September 23, 2015. Sloan, Bagley, Hatcher and Perry will be paid on a contingency fee basis with court approval.

Although not now anticipated, Trustee may seek to retain other professionals during its bankruptcy case by making application to the Bankruptcy Court. If any other professionals are approved, they will also file fee applications with the Bankruptcy Court for allowance of fees and expenses.

vi. ***Plan and Disclosure Statement Matters.***

The Trustee filed his Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code on January 5, 2016, and in connection therewith, the Trustee filed with the Bankruptcy Court this Disclosure Statement with respect to the Plan of Reorganization under Chapter 11 of the Bankruptcy Code. In the Plan, the Trustee seeks to liquidate the Debtor's assets and use the proceed to pay all or a portion of its obligations. The Bankruptcy Court entered an order approving this Disclosure Statement and setting a deadline by which acceptances and rejections and objections to the Plan must be filed and served. In that order, the Bankruptcy Court also scheduled the Confirmation Hearing to consider the Plan for _____, at _____ **. M..**

## 4.

## THE PLAN

**A.    Introduction**

A summary of the principal provisions of the **PLAN OF REORGANIZATION** and the treatment of classes of claims and equity interests is set forth below. This summary is qualified by reference to the Plan, a copy of which is attached as **Exhibit "A"**.

The Plan was conceived by the Trustee as a fair and equitable means for the sale of Debtor's assets in order to provide for the distribution of property and funds to creditors holding valid claims. The Plan proposes to maximize recovery for the allowed claims against the estate. The assets of the Debtor will be liquidated under the Plan in order to maximize the value of the Debtor's business operations. Therefore, the Plan provides the Debtors' creditors with distributions of property having

a value not less than the amount that those holders would receive if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. The Trustee believes that the Plan is feasible and that the Plan provides for the greatest and earliest possible recoveries for the creditors of the Debtor.

## B.     Classification and Treatment of Claims

Section 1123 of the Bankruptcy Code requires that a plan of reorganization classify the claims of a debtor's creditors and equity interest holders. The Plan divides claims and equity interests into classes and sets forth the treatment afforded to each class. Under the Plan, each claim or equity interest is either unimpaired or the holder of the claim or equity interest is to receive various types of consideration, depending on the nature of the claim or equity interest.

A claim is unimpaired under the Plan if the Plan (1) leaves unaltered the legal, equitable and contractual rights of the holder of the claim, (2) provides for cash payment of the full amount of the claim on the Effective Date of the Plan or (3) notwithstanding any contractual provision or law that entitles the holder of the claim to demand or receive accelerated payment after the occurrence of a default, cures the default, reinstates the maturity of the claim as it existed before the default, and compensates the holder of the claim for any damages incurred as a result of any reasonable reliance by the holder on any provision or law that entitles the holder of the claim to demand accelerated payment.

**The claims or interests that are or may be *impaired* under the Plan and therefore are or may be entitled to vote to accept or reject the Plan are *Classes 3, 4,  6, 7 and 8.***

For the holder of a claim or equity interest to participate in the Plan and receive the treatment afforded to the applicable class, the holder's claim or equity interest must be "allowed". A claim or interest will be allowed if it is filed or deemed filed, unless a timely objection to allowance of the claim or interest is made.

Generally, for a claim or equity interest to be filed, a proof of claim or proof of equity interest must be timely filed on behalf of the holder of the claim or equity interest with the Bankruptcy Court. A claim or equity interest will also be deemed to be filed if (1) it is listed on the Schedules of Assets and Liabilities filed with the Bankruptcy Court, as amended (the "Debtor's Schedules"), unless it is listed as disputed, contingent or unliquidated or (2) in the case of an equity security holder, the holder's interest is reflected on the records of the issuer.

If an objection to a claim or interest is made, the Bankruptcy Court must make a determination with respect to allowance of that claim or interest. Only holders of allowed claims and allowed interests are entitled to participate in and receive distributions in accordance with the Plan.

C. **Classes of Claims in Plan.** The following is a summary of the classes of creditors and equity interest holders of the Debtor under the Plan and the provisions made in the Plan for each class.

**Class 1**: **ALLOWED PRIORITY CLAIMS.** This class consists of the Allowed Priority Claims as those terms are defined in Article II herein above, other than Allowed Claims for Administrative Expense or Ad Valorem Tax Claims.

**Class 2**: **ALLOWED AD VALOREM TAX CLAIMS.** This class consists of the Allowed Ad Valorem Tax Claims as those terms are defined in Article II herein above.

**Class 3:** **Allowed Secured Claims of Holders of Valid Mineral Liens (McMullen County, Texas).** This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens pursuant to Chapter 56, Texas Property Code, against the Debtor's oil, gas and mineral lien interests in McMullen County, Texas. A list of the holders of claims filed (without admission of validity) is attached hereto as Exhibit C.

**Class 4:** **Allowed Secured Claims of Holders of Valid Mineral Liens (Gonzales County, Texas).** This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens pursuant to Chapter 56, Texas Property Code, against the Debtor's oil, gas and mineral lien interests in Gonzales County, Texas. A list of the holders of claims filed (without admission of validity) is attached hereto as Exhibit D.

**Class 5**: **ALLOWED CLAIMS OF ASSUMED EXECUTORY CONTRACT OR LEASE CLAIMANTS.** This class consists of the Allowed Claims of all persons holding executory contracts and/or lease agreements with the Debtor which were assumed or assumed and modified by the Debtor including the Assumed Leases.

**Class 6**: **ALLOWED GENERAL UNSECURED CREDITORS CLAIMS**. This class consists of all Allowed General Unsecured Claims as those terms are defined in Article II herein above.

**Class 7:** **Allowed Investor Claims:** This class consists of all Allowed Claims filed by any Person arising from an investment in any one or more oil and gas venture involving the Debtor.

**Class 8**: **ALLOWED CLAIMS OF INTEREST OWNERS.** This class consists of all Allowed Claims of Interest Owners in the Debtor.

D. **Means for Execution of the Plan**

1. <u>Sale of Property.</u> This Plan contemplates that Trustee will sell the Property in a reasonable manner and use best efforts to obtain the highest price and consideration possible for such sale. The sale shall be conducted in accordance with a Motion to Sell Under 11 U.S.C. § 363 when and if granted by the Bankruptcy Court.

2. Litigation: The claims and causes of action held by the Debtor will be prosecuted in a reasonable manner and all net proceeds applied to the provisions of the Plan. These include but are not necessarily limited to all actions under Chapter 5 of the Bankruptcy Code (all payments made by the Debtor prior to the Filing Date are subject to such claims), actions against Investors under their contracts with Debtor, possible actions against Brian Alfaro for breach of fiduciary duty and negligence, and

a. Cause No. M-14-0026-0CV-C; 343rd Judicial District Court, McMullen County, Texas; *Primera Energy, LLC vs. Tejas Tubular Products, Inc.*

b. Cause No. 15-148; 216th Judicial District Court, Kendall County, Texas; *Primera Energy, LLC vs. Brennon D. Short*

3. Reorganized Debtor. The Debtor may not continue in existence as a limited liability company and may be dissolved under applicable laws to the extent possible as soon as possible following the Effective Date.

4. Vesting of Assets. In the event all Allowed Unclassified Claims and Allowed Class 1, 2, 3, 4, 5, 6 and 7 Claims are not paid in full on the Effective Date, except as otherwise provided in this Plan, the Property and assets of the Debtor's bankruptcy estate shall be transferred to and vest in the Creditor Trust on the Effective Date free and clear of all Claims, but subject to the obligations set forth in this Plan.

5. Distributions. The Creditor Trust or Reorganized Debtor may distribute available funds in accordance with the Plan.

6. Creditor Trust.

A. In the event all Allowed Unclassified Claims and Allowed Class 1, 2, 3, 4, 5, 6 and 7 Claims are not paid in full on the Effective Date, on the Effective Date the Creditor Trustee shall execute the Creditor Trust Agreement and the Primera Creditor Trust shall be formed.

B. Except as otherwise provided herein, the Creditor Trustee (in his capacity as Creditor Trustee and not in his individual capacity) shall assume liability for and the obligations to make the distributions required to be made under the Plan and the Creditor Trust Agreement, but shall not otherwise assume liabilities of the Debtor.

C. Creditors in Classes 1-7 shall create the Creditors Trust and the Committee shall designate the initial Creditor Trustee for the purpose of receiving title to all Property and assets and funds the Debtor transfers to the Creditor Trust, including but not limited to, and except as provided in this Plan, all interests in real and personal property, any and all claims and causes of action, rights, claims, and demands against any third parties, investors, individuals, or insiders, that the Debtor owns or has an interest in or can ascertain any fashion, whether pre-petition or post-petition, including but not limited to actions under sections 544 through 550 of the Bankruptcy Code, to

recover assets for the Creditor Trust and the benefit of the Creditors, and any other consideration to be received by the Creditors pursuant to the terms of the Plan. In the event the initial Creditor Trustee resigns or becomes unable to perform the duties of Creditor Trustee, the initial Creditor Trustee shall appoint a successor in writing. In the event no successor Trustee is so appointed, upon application by any interested party, the Bankruptcy Court shall appoint a successor Trustee.

D. The Creditor Trustee shall have all the power and authority to perform any acts set out in the Trust Agreement or allowed to a Trustee under the Texas Trust Act.

E. The Creditor Trustee shall not be liable for actions taken or omitted in his capacity as the Creditor Trustee, except those acts arising out of his own fraud or willful misconduct. The Creditor Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Creditor Trustee. Any indemnification claim of the Creditor Trustee shall be satisfied from the assets of the Creditor Trust.

F. The Creditor Trust shall become effective upon the Effective Date. Thereafter, the Creditor Trust shall remain and continue in full force and effect until the Property has been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Creditor Trust have been fully paid and all remaining income and proceeds of the Trust Property have been distributed in payment of Allowed Claims and, if applicable, Allowed Interests pursuant to the provisions of the Plan. The Creditor Trust will terminate at the end of five years from the Effective Date; provided, that upon complete liquidation of the Trust Property and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Creditor Trust pursuant to the Plan prior to such date, the Creditor Trustee may, with approval of the Bankruptcy Court, sooner terminate the Creditor Trust; and provided further, that prior to the end of five years from the Effective Date the Creditor Trustee or any beneficiary of the Creditor Trust may move the Bankruptcy Court to extend the termination date of the Creditor Trust after notice to interested parties and an opportunity for hearing. Upon termination of the Creditor Trust, the Creditor Trustee will be forever discharged and released from all powers, duties, responsibilities and liabilities pursuant to the Creditor Trust.

G. The Creditor Trust will have the right to retain the services of attorneys, accountants and other agents that, in the discretion of the Creditor Trustee, are necessary to assist the Creditor Trust in the performance of its duties. The fees and expenses of such professionals will be paid by the Creditor Trust in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court. The Creditor Trustee shall be entitled to compensation for his services at a rate not to exceed $500 per hour and for reimbursement of expenses which shall be paid by the Creditor Trust in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court.

H. The Creditor Trust to be established for the benefit of Creditors is intended to qualify as a liquidating trust for federal income tax purposes. All items of income, deduction, credit or loss

of the Creditor Trust shall be allocated for federal, state and local income tax purposes among the Holders of Allowed Claims and Interests.

## THE CREDITOR TRUST

The Creditor Trust shall exist after the Effective Date with all the powers of a trust under applicable Texas law. The Creditor Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on and after the Effective Date. After the Effective Date, the Creditor Trust will own the Trust Property and shall have the flexibility to conduct any operations necessary to liquidate the Trust Property and to enhance or preserve the value of the Trust property consistent with the expeditious and beneficial liquidation of such property. A copy of the proposed Trust Agreement is attached to the Plan as Exhibit A.

**E.    Effect of Rejection by One or More Classes of Claims**

i    *Impaired Classes to Vote.* Each impaired class of claims and interests will be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim (as defined below) that has not been temporarily allowed for purposes of voting on the Plan may vote that claim in an amount equal to the portion, if any, of the claim shown as fixed, liquidated and undisputed in the Debtors' Schedules.

ii    *Acceptance by Class of Creditors.* A class will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the allowed claims or interests of the class actually voting on the Plan.

iii.    *Cramdown.* If any impaired class fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

**F.    Provisions for Resolution and Treatment of Preferences, Fraudulent Conveyances and Disputed Claims**

i.    *Preferences and Fraudulent Conveyances.* Under the Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain, with the exclusive right to enforce in its sole discretion, any and all causes of action of the Debtor, including all causes of action that the Debtor owns under Section 541 of the Bankruptcy Code or similar state laws or that may exist under Sections 510, 544 through 550 and 553 of the Bankruptcy Code or under similar state laws. For disclosure purposes, all payments made within one year (if to insiders) or 90 days (if to non-insiders) prior to Debtor's filing for bankruptcy protection are subject to these provisions and Reorganized Debtor may pursue recovery of any or all of such payments. All recoveries from such actions, net of costs and expenses, shall be paid in accordance with the provisions of this Plan.

ii. **Objections to Claims.** Any party in interest may object and contest the allowance of any Claims filed with the Bankruptcy Court for 90 days following the Effective Date. Claims listed as disputed, contingent or unliquidated on the Schedules are considered contested Claims, except Claims otherwise treated by the Plan or previously allowed or disallowed by Final Order of the Bankruptcy Court.

iii. **Disputed Claims Reserve.** The distributions reserved for the holders of Disputed Claims will be held in trust by the Debtor for the benefit of the holders of Disputed Claims pursuant to the Plan (the "Disputed Claims Reserve"). The Disputed Claims Reserve will be held in trust by the Debtors for the benefit of the holders of Disputed Claims (pending a determination of the Disputed Claims).

A "Disputed Claim" is a claim against a Debtor (i) as to which an objection has been filed on or before the deadline for objecting to a claim and which objection has not been withdrawn or resolved by entry of a final order of the Bankruptcy Court, (ii) that has been asserted in an amount greater than that listed in the Debtor's Schedules as liquidated and not disputed or contingent, or (iii) that the Debtor's Schedules list as contingent, unliquidated or disputed.

The Trustee shall retain the right to litigate Disputed Claims to determine the extent to which the Disputed Claim should be allowed. During the pendency of such litigation, the Creditor Trust shall escrow into a Disputed Claims Reserve such amounts as may be fixed by agreement, by provisional allowance in the Confirmation Order, or by other order of the Bankruptcy Court, unless other depository arrangements or terms are directed by order of the Bankruptcy Court.

When a Disputed Claim becomes an allowed claim, the distributions allowed for the allowed claim will be released from the Disputed Claims Reserve and delivered to the holder of the allowed claim. If a Disputed Claim is disallowed, the distributions provided for the Claim will be released to the Creditor Trust for use in its business operations.

All Cash held in the Disputed Claims Reserve and the reserve established for Administrative Expense Claims shall be invested in those investments described in section 345 of the Bankruptcy Code. The Creditor Trust shall be responsible for the cost and expenses incurred in connection with the maintenance of these reserves and the making of Distributions from the reserves after the Effective Date.

iv. **Unclaimed Distributions:** Distributions to be made under the Plan to claimants holding allowed claims will be made by the Debtor by first class, United States mail, postage prepaid to (i) the latest mailing address set forth in a proof of claim filed with the Bankruptcy Court by or on behalf of the claimant or (ii) if a proof of claim has not been timely filed, the mailing address set forth in the Debtors' Schedules filed by the Debtors. The Debtor will not be required to make any other effort to locate or ascertain the address of the holder of any claim other than as specifically set out in the Plan.

If any person entitled to receive a distribution from the Debtor under the Plan does not come forward to collect a distribution or the distribution otherwise remains unclaimed as of one (1) year after the Effective Date, it will be retained by the Debtor as appropriate, and the affected claimant will have no further rights against the Debtor.

## G.  Claims Belonging to the Estate and Discharge of Claims Against the Debtors

i.  ***Causes of Action.***  All claims recoverable under Chapter 5 of the Bankruptcy Code, the Bankruptcy Code or similar state laws, all claims against third parties on account of any indebtedness, and all other claims owed to or in favor of Debtor to the extent not specifically compromised and released pursuant to this Plan or an agreement referred to or incorporated herein, shall be preserved and retained for enforcement by Creditor Trust after the Effective Date. In the event of conversion to a Chapter 7 proceeding, such claims shall be preserved and retained for enforcement by the Chapter 7 Trustee, subject to applicable limitations periods.

ii  ***Legally Binding Effect; Discharge of Claims and Interests:***  The provisions of the Plan will (i) bind all creditors and equity interest holders, whether or not they accept the Plan, and (ii) discharge the Debtors from all debts that arose before the Petition Date. In addition, the distributions of cash provided for under the Plan will be in exchange for and in complete satisfaction, discharge and release of all claims against and interests in the Debtors or any of its assets or properties, including any claim or interest accruing after the Petition Date and before the Effective Date. On and after the Effective Date, all holders of impaired claims and interests will be precluded from asserting any claim against the Reorganized Debtors or its assets or properties based on any transaction or other activity that occurred before the Petition Date. The distributions provided for creditors and equity interest holders will not be subject to any claim by another creditor or equity interest holder by reason of an assertion of a contractual right of subordination.

iii.  ***List of Claims and Causes of Action Held by Debtor***

1.  Cause No. M-14-0026-0CV-C; 343rd Judicial District Court, McMullen County, Texas; *Primera Energy, LLC vs. Tejas Tubular Products, Inc.*

2.  Cause No. 15-148; 216th Judicial District Court, Kendall County, Texas; *Primera Energy, LLC vs. Brennon D. Short*

3.  Possible claims against each investor for unpaid obligations related to the wells in which they invested pursuant to their investment agreements

4.  Possible claims against Brian Alfaro for breach of fiduciary duties, negligence, and malfeasance in his position as President of Debtor

5.  All claims arising post-petition relating to the proposed sale of properties

6. Claims under Chapter 5 of the Bankruptcy Code to recover preferential or fraudulent transfers of property against any Person receiving payment prior to the Filing Date.

## H. Committee

The Committee shall be dissolved and terminated on the Effective Date or as soon thereafter as all pending objections to claims involving the Committee have been finally adjudicated.

## I. Retention of Jurisdiction

i. *Jurisdiction.* Until this Chapter 11 case is closed, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including jurisdiction necessary to insure that the purpose and intent of the Plan are carried out and to hear and determine all claims that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all claims against the Debtor and to enforce all causes of action that may exist on behalf of the Debtor. Nothing contained in the Plan will prevent the Debtor from taking such action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

ii. *Examination of Claims.* After the Confirmation Date, the Bankruptcy Court will further retain jurisdiction to decide disputes concerning the classification and allowance of the claim of any creditor and the re-examination of claims that have been allowed for the purposes of voting, and to determine such objections as may be filed to creditors' claims. The failure by the Debtor to object to, or to examine, any claim for the purposes of voting, will not be deemed a waiver of the right of the Debtor to object to, or to re-examine, the claim, in whole or in part.

iii. *Determination of Disputes.* The Bankruptcy Court also will retain jurisdiction after the Confirmation Date to determine all questions and disputes regarding title to the assets of the Debtor's estate, disputes concerning the allowance of claims, and all causes of action, controversies, disputes or conflicts, whether or not subject to any pending action as of the Confirmation Date, for the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

iv. *Additional Purposes.* The Bankruptcy Court will retain jurisdiction for the following additional purposes after the Effective Date:

(a) to modify this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b) to assure the performance by Reorganized Debtor of its obligations to make Distributions under this Plan;

(c) to enforce and interpret the terms and conditions of this Plan;

(d)     to adjudicate matters arising in this bankruptcy case, including matters relating to the formulation and consummation of the Plan;

(e)     to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of Reorganized Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as this Bankruptcy Court may deem necessary;

(f)     to enter an order terminating this Chapter 11 Case;

(g)     to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

(h)     to allow applications for fees and expenses pursuant to section 503(b) of the Bankruptcy Code; and

(i)     to decide issues concerning federal tax reporting and withholding which arise in connection with the confirmation or consummation of this Plan.

## I.     Default under Plan

i.     ***Asserting Default.***  If the Debtor or Creditor Trust defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents will provide independent bases for relief), any creditor or party in interest desiring to assert the default may provide the Trustee with written notice of the alleged default.

ii.     ***Curing Default.***

Except as otherwise set out herein, the Debtor or Creditor Trust shall have thirty (30) days from receipt of the written notice in which to cure an alleged breach or default under this Plan, including any default under any Related Document.  The notice shall be delivered by *United States certified mail, postage prepaid, return receipt requested*, and by *regular, first class mail, postage prepaid,* addressed to the Trustee at the following address or at such other address as is provided in writing by Trustee:

> Jason R. Searcy, Trustee
> SEARCY & SEARCY, P.C.
> P.O. Box 3929
> Longview, Texas 75606
> (903) 757-9559 Facsimile

If the default is not cured, any Creditor or party in interest may thereafter file with the Bankruptcy Court and serve upon Trustee a motion to compel compliance with the applicable

provision of the Plan. The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.

## J.    Miscellaneous Provisions

i.    ***Compliance with Tax Requirements and Limits on Distribution.***  In connection with the Plan, the Debtor and Creditor Trust will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan will be subject to those withholding and reporting requirements. Any creditor or beneficiary of the Creditor Trust shall provide the Creditor Trustee or Trustee a form W-9 before any distribution may be paid to such creditor or beneficiary. If, after three written requests, no such form has been provided, the claim asserted by such creditor or beneficiary shall be deemed waived and disallowed.

ii.    ***Amendment of the Plan.***  The Plan may be amended by the Trustee or before or after the Effective Date as provided in Section 1127 of the Bankruptcy Code.

iii.    ***Revocation of the Plan.***  The Trustee has reserved the right to revoke and withdraw the Plan at any time before the Confirmation Date.

iv.    ***Effect of Withdrawal or Revocation.***  If the Trustee revokes or withdraws the Plan before the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan will be null and void. In that event, nothing contained in the Plan or in this Disclosure Statement will be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

v.    ***Due Authorization By Creditors.***  Each creditor who elects to participate in the distributions provided for in the Plan warrants that the creditor is authorized to accept in consideration of the claim against the Debtor the distributions provided for in the Plan and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the creditor under the Plan.

vi.    ***Filing of Additional Documentation.***  On or before the Effective Date, the Trustee will file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan.

vi.    ***Limitation of Liability in Connection with the Plan, Disclosure Statement and Related Documents and Related Indemnity.***

(a)    The Plan Participants (as defined hereafter) will neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan,

the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement or the Confirmation Order, including solicitation of acceptances of the Plan; provided, however, the provisions of this Section will have no effect on the liability of any Plan Participant that would otherwise result from any such act or omission to the extent that such act or omission is determined in a final order to have constituted gross negligence or willful misconduct. "Plan Participants" means the Trustee, and the employees and advising professionals of the Trustee in this proceeding..

(b)     The Creditor Trust will indemnify each Plan Participant, hold each Plan Participant harmless from, and reimburse each Plan Participant for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by a Plan Participant arising from any liability described in this Section.

x.     ***Section Headings.*** The section headings used in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

## 5.

## FEASIBILITY

THE FORECASTED FINANCIAL RESULTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED ON ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY UNCERTAIN AND, THOUGH CONSIDERED REASONABLE BY THE TRUSTEE, ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, LITIGATION AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, ALL OF WHICH ARE DIFFICULT TO PREDICT AND MANY OF WHICH ARE BEYOND THE CONTROL OF THE TRUSTEE. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE FORECASTED RESULTS WILL BE REALIZED AND THAT ACTUAL RESULTS WILL NOT BE SIGNIFICANTLY HIGHER OR LOWER THAN FORECASTED. THE TRUSTEE MAY REVISE THESE ESTIMATES AND ASSUMPTIONS AT OR BEFORE THE CONFIRMATION HEARING ON THE PLAN.

A.     **General.** As a condition to confirmation of the Plan, Section 1129 of the Bankruptcy Code requires that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor. This Plan calls for the liquidation of Debtor's assets and the Trustee has made a reasonable determination that it is in the best interests of all of the Debtors creditors that its assets be liquidated as a part of the Plan. Accordingly, this provision is not applicable to this Plan.

B.     **Operating Report.** The Trustee has continued to operate Debtor's business during the pendency of this bankruptcy proceeding. A true and correct copy of the most recent Monthly

Operating Report filed by the Trustee in the bankruptcy action showing its post-petition operations is attached hereto as **Exhibit "B"** and incorporated herein for all purposes.

C.    **Sale of Oil and Gas Interests.**    Trustee will sell the oil and gas interests owned by Debtor. The proceeds of sale will go first to pay ad valorem taxes attributable to each respective property, then to any secured administrative claim, and then to the appropriate Allowed Secured Claim pursuant to the Plan of Reorganization. It is anticipated that the McMullen County and Gonzales County properties will not sell for sufficient amounts to pay the Allowed Secured Claims in full. It is also anticipated that the sale of the Montague County properties will be free of secured claims other than Ad Valorem tax claims.

D.    **Litigation.**    The Trustee retained Sloan, Bagley, Hatcher and Perry as special counsel to prosecute two state court suits which were pending on the Filing Date. In these actions total damages in excess of $3 million are sought. No trial dates have been scheduled.

F.    **Funds and Assets.**    Upon filing of this Disclosure Statement, the Debtor's estate consists of the following:

a.    Cash of approximately $600,000
b.    McMullen County oil and gas properties (estimated value $610,000).
c.    Gonzales County oil and gas properties (estimated value $900,000).
d.    Montague County oil and gas properties (estimated value $300,000).
e.    Litigation Claims.
f.    Investor Obligations

These, and any other assets of the estate, will be used to fund the Plan.

### 6.

### ALTERNATIVES TO CONFIRMATION
### AND CONSUMMATION OF PLAN

The Trustee believes that the Plan affords holders of claims and equity interests the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of those holders. If the Plan is not confirmed, however, the theoretical alternatives include: (1) continuation of the pending Chapter 11 case; (2) alternative plans of reorganization; or (3) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

## A.     Continuation of Case

If the Debtor remains in Chapter 11, the Trustee could continue to operate its business and manage its properties, but it would remain subject to the restrictions imposed by the Bankruptcy Code and to the stigma associated with bankruptcy proceedings.

## B.     Alternative Plans of Reorganization

If the Plan is not confirmed, any party in interest in the case could attempt to formulate and propose a different plan or plans.

## C.     Liquidation under Chapter 7

If no plan can be confirmed, the Debtor's Chapter 11 cases may be converted to cases under Chapter 7 of the Bankruptcy Code. In a Chapter 7 proceeding, a trustee would be elected or appointed to liquidate the assets of each Debtor. The proceeds of the liquidation would be distributed to the holders of claims against the Debtor in accordance with the priorities established by the Bankruptcy Code. Because the Debtor's business operations would cease as of the conversion of the case to Chapter 7, and the Debtor is the operator of most of its oil and gas properties, the oil and gas properties would be shut-in and production cease. This could threaten the viability of the wells and validity of the leases on which those wells are located. The Trustee believes that a sale of the Debtor's interest in these conditions would result in substantially less value than an orderly sale under the proposed Plan.

Under Chapter 7, a secured creditor whose claim is fully secured would be entitled to full payment, including interest, from the proceeds of the sale of its collateral. Unless its claim is nonrecourse, a secured creditor whose collateral is insufficient to pay its claim in full would be entitled to assert an unsecured claim for the deficiency. Claims entitled to priority under the Bankruptcy Code would be paid in full before any distribution to general unsecured creditors. Funds, if any remain, after payment of secured claims and priority claims would be distributed pro rata to general unsecured creditors.

The Trustee believes that liquidation under Chapter 7 would result in substantial diminution of the value of Debtor's estate because of additional administrative expenses involved in the appointment of trustees and attorneys, accountants and other professionals to assist the trustees. In particular, in a Chapter 7 scenario, it is likely, and presumed for purposes of this analysis, a trustee would proceed with liquidation of Debtor's assets under a forced sale scenario which would result in much lower offers.

The Plan proposed by the Trustee calls for the liquidation of all of the Debtor's assets under an orderly process. It also allows for the creation of the Creditors' Trust to continue to collect the obligations over a longer period of time that possible under a Chapter 7 proceeding which would likely result in a Chapter 7 Trustee severely discounting the amounts due for an early disposition of

the proceeding. This, the Trustee believes, would seriously reduce the amount of recovery to creditors.

7.

**VOTING PROCEDURES AND REQUIREMENTS**

**A.  Voting Procedures and Requirements**

The Debtor is seeking the acceptance of the Plan by all classes of impaired creditors and the holders of the Existing Equity Interests.

A ballot to be used to accept or reject the Plan has been enclosed with all copies of this Disclosure Statement mailed to holders of claims whose claims are impaired by provisions of the Plan. Accordingly, this Disclosure Statement (and the annexes, exhibit and schedules to this Disclosure Statement), together with the accompanying ballot and the related materials delivered together with this Disclosure Statement, are being furnished to all holders of an allowed claim or interest, and may not be relied on or used for any purpose other than to determine whether or not to vote to accept or reject the Plan.

Ballots with respect to the Plan will be accepted by the Trustee until **5:00 p.m., Central Standard Time**, on_____ (the "Voting Deadline"). The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtors' counsel no later than **5:00 p.m., Central Standard Time**, on_____ ____, at the following address:

SEARCY & SEARCY, P.C.<br>
P. O. Box 3929<br>
Longview, Texas 75606<br>
Fax. (903) 757-9559

Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the Debtor in connection with the Trustee's request for confirmation of the Plan.

After carefully reviewing this Disclosure Statement and its annexes, exhibits and schedules, please indicate your vote on the enclosed ballot, and return it to SEARCY & SEARCY, P.O., Box 3929, Longview, Texas 75606. In voting for or against the Plan, please use only the ballot sent to you with this Disclosure Statement (except as set forth below). Please complete and sign your ballot in accordance with the instructions set forth on the ballot.

Any ballots received that do not indicate either an acceptance or a rejection of the Plan or that indicate both an acceptance and rejection of the Plan will be deemed not to constitute a vote.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots or master ballots will be determined by the Debtor in its sole discretion, whose determination will be final and binding.

This Disclosure Statement has been approved by order of the Bankruptcy Court, (the "Disclosure Statement Order"), as containing information of a kind and in sufficient detail to enable a hypothetical, reasonable person, typical of a holder of a claim or interest, to make an informed judgment whether to accept or reject the Plan. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute a ruling as to the fairness or merits of the Plan.

The Bankruptcy Court will hold a hearing on confirmation of the Plan, at which time the Bankruptcy Court will consider objections to confirmation, if any, commencing at _____. **m. Central Standard Time** on _____, in the United States Bankruptcy Court, San Antonio, Texas. The Confirmation Hearing may be adjourned from time to time without notice other than the announcement of an adjourned date at the Confirmation Hearing. Objections to confirmation of the Plan, if any, must be in writing and served and filed as described in this Disclosure Statement.

FOR YOUR BALLOT OR TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED AS SET FORTH ABOVE AND RECEIVED BY THE VOTING DEADLINE (**5:00 P.M., CENTRAL STANDARD TIME**, ON_____). BALLOTS SHOULD BE DELIVERED OR MAILED TO: SEARCY& SEARCY, P.C.; P.O. BOX 3929, LONGVIEW, TEXAS 75606.

THE FOREGOING IS A SUMMARY. THIS DISCLOSURE STATEMENT AND THE ANNEXES, SCHEDULES AND EXHIBIT TO THIS DISCLOSURE STATEMENT SHOULD BE READ IN THEIR ENTIRETY BY ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS IN DETERMINING WHETHER TO ACCEPT OR REJECT THE PLAN.

## B.     Parties in Interest Entitled to Vote

Any holder of a claim against or equity interest in the Debtor whose claim or equity interest is impaired under the Plan and entitled to vote under the Plan, is entitled to vote to accept or reject the Plan if either (1) its claim or equity interest has been scheduled by the Debtor (and the claim or equity interest is not scheduled as disputed, contingent or unliquidated), or (2) it has timely filed a proof of claim or proof of equity interest. If the Debtor or Trustee has filed an objection with respect to a claim or equity interest, the holder of that claim or interest is not entitled to vote, unless the Bankruptcy Court, upon application of the holder, temporarily allows the claim or equity interest in an amount that the Bankruptcy Court deems proper for the purpose of accepting or rejecting the Plan. A vote may be disregarded if the Bankruptcy Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C. Definition of Impairment

A class of claims or interests is impaired under a plan of reorganization unless, as set forth in section 1124 of the Bankruptcy Code, with respect to each claim or interest of the class:

    i.    the Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the claim or interest; or

    ii.    notwithstanding any contractual provisions or applicable laws that entitles the holder of a claim or interest to demand or receive accelerated payment of the claim or interest after the occurrence of a default, the Plan:

        a)    cures any default that occurred before or after the commencement of the case other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code;

        b)    reinstates the maturity of the claim or interest as the maturity existed before the default;

        c)    compensates the holder of the claim or interest for any damages incurred as a result of any reasonable reliance by the holder on those contractual provisions or applicable laws; and

        d)    does not otherwise alter the legal, equitable or contractual rights to which the holder is entitled with respect to the claim or interest.

## D. Classes Impaired Under the Plan

The only claims or interests that are or may be *impaired* **under the Plan and therefore are or may be entitled to vote** to accept or reject the Plan are *Classes 3, 4, 6, 7 and 8.*

## E. Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in amount, and more than one-half in number, of the claims of that class that actually cast ballots for acceptance or rejection of the Plan. Thus, class acceptance occurs only if two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

# 8.

# CONFIRMATION OF THE PLAN

## A.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. By order of the Bankruptcy Court, the Confirmation Hearing on the Plan has been scheduled on _____, at _____**p.m. Central Standard Time**, in the United States Bankruptcy Court, San Antonio, Texas. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be made in writing and filed in the Bankruptcy Court and served upon the parties entitled to service, together with proof of service on or before_____.

Objections to confirmation of the Plan are governed by Rule 9014 of the Bankruptcy Rules. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## B.    Requirements For Confirmation of The Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied. If the requirements are satisfied, the Bankruptcy Court will enter an order confirming the Plan. As set forth in Section 1129 of the Bankruptcy Code, these requirements are as follows:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponent of the plan complies with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

- The proponent of the plan has disclosed (1) the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan and the appointment to, or continuance in, the office of that individual, is consistent with the interests of creditors and equity security holders and with public policy, and (2) the identity of and the nature of any compensation for any insider that will be employed or retained by the reorganized debtor.

- Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or the rate change is expressly conditioned on that approval.

- With respect to each impaired class of claims or interests:

  - each holder of a claim or interest of the class (1) has accepted the plan; or (2) will receive or retain under the plan on account of the claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that the holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the plan; or

  - if Section 1111(b)(2) of the Bankruptcy Code applies to the claims of the class, the holder of a claim of the class will receive or retain under the plan on account of the claim property of a value, as of the effective date of the plan, that is not less than the value of the holder's interest in the estate's interest in the property that secures those claims.

- With respect to each class of claims or interests:

  - the class has accepted the plan; or

  - the class is not impaired under the plan;

- Except to the extent that the holder of a particular claim has agreed to a different treatment of the claim, the plan provides that:

  - with respect to a claim of a kind specified in Section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of the claim will receive on account of the claim cash equal to the allowed amount of the claim;

•• with respect to a class of claims of a kind specified in Section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, each holder of a claim of the class will receive (1) if the class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of the claim; or (2) if the class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of the claim; and

•• with respect to a claim of a kind specified in Section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of the claim deferred cash payments, over a period not exceeding six years after the date of assessment of the claim, of a value, as of the effective date of the plan, equal to the allowed amount of the claim.

- If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless the liquidation or reorganization is proposed in the plan.

The Trustee believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that they have complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

The Trustee believes that the holders of all claims and equity interests impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in amounts not less than the amounts that they would receive if the Debtor was liquidated in a case under Chapter 7 of the Bankruptcy Code. At the confirmation hearing, the Bankruptcy Court will determine whether holders of claims and equity interests would receive greater distributions under the Plan than they would receive in a liquidation under Chapter 7.

The Trustee believes that confirmation of the Plan is not likely to be followed the need for further financial reorganization of the Debtor or any successor to the Debtors under the Plan.

## C.    Cramdown

If any impaired class of claims or equity interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Trustee or if, as to each impaired class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class that does not accept the Plan receives less than is being received by a class of equal rank.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in Section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

i.   ***Secured Claims***

- The plan provides that the holders of the claims retain the liens securing the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of the claims, and each holder of a claim of the class will receive on account of the claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in the property;

- The plan provides for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims, free and clear of those liens, with those liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under the previous or following bullet point of this subparagraph; or

- The plan provides for the realization by the holders of the indubitable equivalent of the claims.

ii.  ***Unsecured Claims and Investor Claims***

- The plan provides that each holder of a claim of the class receive or retain on account of the claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim; or

- The holder of any claim or interest that is junior to the claims of the class will not receive or retain under the plan on account of the junior claim or interest any property.

iii. ***Interests***

- The plan provides that each holder of an interest of the class receive or retain on account of the interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the interest; or

- The holder of any interest that is junior to the interests of the class will not receive or retain under the plan on account of the junior interest any property.

If one or more classes of impaired claims and equity interests reject the Plan, the Bankruptcy Court will determine at the confirmation hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of claims or equity interests.

In the Trustee's view, the Plan is confirmable under Section 1129(b) of the Bankruptcy Code, if necessary.

## 9.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.    General.

The following is a general summary of certain material federal income tax consequences of the implementation of the Plan to the Debtor, creditors and shareholders. This summary does not discuss all aspects of federal income taxation that may be relevant to the Debtor, to a particular creditor or shareholder in light of its individual investment circumstances or to certain creditors or shareholders subject to special treatment under the federal income tax laws (for example, tax-exempt organizations, financial institutions, broker-dealers, life insurance companies, foreign corporations or individuals who are not citizens or residents of the United States). This summary also does not discuss any aspects of state, local or foreign taxation.

This summary is based upon the Internal Revenue Code of 1986, as amended (the "IRC"), the Treasury regulations (including temporary regulations) promulgated thereunder, judicial authorities and current administrative rulings, all as in effect on the date hereof and all of which are subject to change (possibly with retroactive effect) by legislation, administrative action or judicial decision. Moreover, due to a lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein. The Debtor has not requested a ruling from the Internal Revenue Service (the "IRS") with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

**FOR THE FOREGOING REASONS, CREDITORS AND OWNERS OF EQUITY INTERESTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) TO THEM OF THE PLAN. THE DEBTORS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY HOLDERS OF**

**CLAIMS OR SHAREHOLDERS, NOR ARE THE DEBTORS RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.**

**B.      Federal Income Tax Consequences to the Debtor**

     i.      *Cancellation of Indebtedness*

Under general tax principles, the Debtor would realize cancellation of debt ("COD") income to the extent that the Debtors pay a creditor pursuant to the Plan an amount of consideration in respect of a claim against the Debtors that is worth less than the amount of such claim.  For this purpose, the amount of consideration paid to a creditor generally would equal the amount of cash or the fair market value on the Effective Date of any other property paid to such creditor.  Because the Debtor will be in a bankruptcy case at the time the COD income is realized, the Debtor will not be required to include COD income in gross income, but rather will be required to reduce certain of their tax attributes by the amount of COD income so excluded.  Under the general rules of IRC section 108, the required attribute reduction would be applied first to reduce the Debtors' net operating loss carry forwards ("NOLs") to the extent of such NOLs, with any excess excluded COD income applied to reduce certain other tax attributes.

IRC section 108(b)(5) provides an election pursuant to which the Debtor can elect to apply the required attribute reduction first to reduce the basis of their depreciable property to the extent of such basis, with any excess applied next to reduce their NOLs and then certain other tax attributes. The Debtor has not yet determined whether they will make the election under IRC section 108(b)(5).

     ii.      *Federal Income Tax Consequences to Holders of Claims and Holders of Equity Interests*

The federal income tax consequences of the implementation of the Plan to a holder of a claim will depend upon a number of factors, including whether such holder is deemed to have participated in an exchange for federal income tax purposes, and, if so, whether such exchange transaction constitutes a tax-free recapitalization or a taxable transaction; whether such holder's present debt claim constitutes a "security" for federal income tax purposes; the type of consideration received by such holder in exchange for its allowed claim; and whether such holder reports income on the accrual basis.

     iii.      *Holders of Other Priority Claims and Certain General Unsecured Claims*

A holder whose claim is paid in full or otherwise discharged on the Effective Date will recognize gain or loss for federal income tax purposes in an amount equal to the difference between (a) the fair market value on the Effective Date of any property received by such holder in respect of its claim (excluding any property received in respect of a claim for accrued interest that had not been included in income) and (b) the holder's adjusted tax basis in the claim (other than any claim for such accrued interest).  A holder's tax basis in property received in exchange for its claim will

generally be equal to the fair market value of such property on the Effective Date. The holding period for any such property will begin on the day after the Effective Date.

Under the Plan, some property may be distributed or deemed distributed to certain holders of claims with respect to their claims for accrued interest. Holders of claims for accrued interest which previously have not included such accrued interest in taxable income will be required to recognize ordinary income equal to the fair market value of the property received with respect to such claims for accrued interest. Holders of claims for accrued interest which have included such accrued interest in taxable income generally may take an ordinary deduction to the extent that such claim is not fully satisfied under the Plan (after allocating the distribution between principal and accrued interest), even if the underlying claim is held as a capital asset. The tax basis of the property received in exchange for claims for accrued interest will equal the fair market value of such property on the Effective Date, and the holding period for the property received in exchange for such claims will begin on the day after the Effective Date. The extent to which consideration distributable under the Plan is allocable to interest is not clear. Claimholders are advised to consult their own tax advisors to determine the amount, if any, of consideration received under the Plan that is allocable to interest.

The market discount provisions of the IRC may apply to holders of certain claims. In general, a debt obligation other than a debt obligation with a fixed maturity of one year or less that is acquired by a holder in the secondary market (or, in certain circumstances, upon original issuance) is a "Market Discount Bond" as to that holder if its stated redemption price at maturity (or, in the case of a debt obligation having original issue discount, the revised issue price) exceeds the tax basis of the debt obligation in the holder's hands immediately after its acquisition. However, a debt obligation will not be a "market discount bond" if such excess is less than a statutory *de minimis* amount. Gain recognized by a holder of a claim with respect to a "market discount bond" will generally be treated as ordinary interest income to the extent of the market discount accrued on such debt obligation during such holder's period of ownership, unless such holder elected to include accrued market discount in taxable income currently. A holder of a "market discount bond" that is required under the market discount rules of the IRC to defer deduction of all or a portion of the interest on indebtedness incurred or maintained to acquire or carry the debt obligation may be allowed to deduct such interest, in whole or in part, on disposition of such debt obligation.

iv.     ***Withholding***

The Trustee will withhold all amounts required by law to be withheld from payments to holders of claims. In addition, holders of claims may be required to provide certain tax information to the Trustee.

## 10.

## RIGHT TO AMEND

Notwithstanding any provision of this Disclosure Statement, Trustee reserves the right pursuant to 11 U.S.C. § 1125 to amend the Plan following approval of this Disclosure Statement. Notice of any Plan amendments so made will be given in accordance with the applicable provisions of the Bankruptcy Code.

## 11.

## CONCLUSION

All holders of claims against and equity interests in the Debtor are urged to vote to accept the Plan and to evidence their acceptance by returning their ballots so that the ballots will be received by _____.

DATED: January 5, 2016.

Respectfully submitted,

**PRIMERA ENERGY, LLC.**

By: */S/ Jason R. Searcy* _____
Chapter 11 Trustee

Jason R. Searcy
SBN 17953500
Joshua P. Searcy
SBN 24053468
Callan C. Searcy
SBN 24075523
*Searcy & Searcy, P.C.*
PO Box 3929
Longview, Texas 75606
Tel. (903) 757-3399
Fax. (903) 757-9559
Counsel for Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PRIMERA ENERGY, LLC | § | CASE NO. 15-51396 |
| 21022 Gathering Oak #2101 | § | |
| San Antonio, Texas 78260 | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**PLAN OF REORGANIZATION**

Jason R. Searcy, Chapter 11 Trustee (the "Trustee") for Primera Energy, LLC (the "Debtor"), proposes this Plan of Reorganization (the "Plan"), pursuant to section 1121(a), title 11, United States Code, for the resolution of Debtor's outstanding Creditor Claims and Equity Interests.

**ARTICLE I.**

**SUMMARY OF THIS PLAN**

1.1. Capitalized terms used in the Plan are as defined in Article 2, the Definitions, Construction and Interpretation portion of this Plan.

1.2. This Plan provides for the treatment of all Claims in a manner that is in the best interests of Creditors and is fair and equitable. It calls for the orderly sale and liquidation of Debtor's business operations and its assets and the use of sale proceeds and funds on hand to pay allowed claims under the terms and conditions set out herein.



# ARTICLE II.

## DEFINITIONS, CONSTRUCTION AND INTERPRETATION

As used in the Plan, the following terms shall have the meanings specified below.

2.1.     Acceptance: has the meaning contained in Section 1126 of the Bankruptcy Code, 11 U.S.C. § 1126, and requires that the holders of a class of Claims against the Debtor accept this Plan by at least two-thirds in amount and more than one-half in number of such class of Claims or two-thirds in amount of those Claims or interests actually voting in connection with this Plan.

2.2.     Administrative Expense:  Any cost or expense of administration of the Chapter 11 Case incurred on or before the Confirmation Date entitled to priority under section 507(a) and allowed under section 503(b) of the Bankruptcy Code, unless otherwise provided in this Plan, including any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties, any actual and necessary expenses of operating the business of the Debtor, any indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property or for provision of services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under chapter 123, title 28, United States Code, and shall further include all fees due to the Office of the United States Trustee both pre-and post-confirmation.

2.3.     Ad Valorem Tax Claim: consists of a claim(s) of taxing authorities for ad valorem property taxes which are secured by virtue of TEX. PROP. TAX CODE § 32.01, *et. seq.*

2.4.     Adversary shall mean and refer to any Adversary Proceeding filed and or pending before the United States Bankruptcy Court for the Western District of Texas.

2.5     Allowed: When used in connection with a Claim, any Claim against or Equity Interest in the Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing proofs of Claim or Equity Interest or such other applicable date as ordered by the Bankruptcy Court or permitted by the Bankruptcy Rules; or, if no proof of Claim or Equity Interest is filed, any Claim against or Equity Interest in the Debtor which has been or in the future is listed by the Debtor as liquidated in amount and not disputed or contingent and a Claim or Equity Interest as to which no objection to the allowance thereof has been interposed; or, in the case of Administrative Expense Claim recognized as such by the Debtor, such Claim or Equity Interest has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of the Claim.

2.6.    Assumed Agreements: All executory contracts and unexpired leases of the Debtor, which have not been or are subsequently rejected.

2.7.    Bankruptcy Code: The Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, as applicable to this Chapter 11 case.

2.8.    Bankruptcy Court: The United States Bankruptcy Court for the Western District of Texas, San Antonio Division, having jurisdiction over the Chapter 11 Case, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

2.9.    Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to this Chapter 11 Case.

2.10.    Bar Date: The final date for filing proofs of Claims or Equity Interests in this case as established by order of the Bankruptcy Court.

2.11.    Cash: Cash, cash equivalents and other readily marketable securities or instruments issued by a Person other than a Debtor, including readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

2.12.    Chapter 11 Case: This case under Chapter 11 of the Bankruptcy Code.

2.13.    Claim: Any right to payment from the Debtor arising at any time before the Effective Date, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to any equitable remedy for future performance if the applicable breach gives rise to a right of payment from any of the Debtor, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.14.    Code: The United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, and thereafter amended.

2.15.    Committee: The Official Committee of Unsecured Creditors appointed by the United States Trustee in this proceeding.

2.16.    Confirmation: The date upon which the Bankruptcy Court enters the Confirmation Order to confirm the Plan which becomes final and non-appealable after hearing conducted pursuant to Section 1129 of the Bankruptcy Code.

2.17.    Confirmation Date:    The date on which the Bankruptcy Court enters the Confirmation Order.

2.18. <u>Confirmation Order</u>: A Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.19. <u>Contingent Claim</u>: A Claim arising from a contract or agreement where the Debtor agreed to be contingently liable for or guaranteed the obligations of a person or entity.

2.20. <u>Creditor</u>: Any person that holds a Claim against the Debtor that arose on or before the Effective Date, or a Claim against the Debtor of any kind specified in sections 502(f), 502(g), 502(h) or 502(I) of the Bankruptcy Code.

2.21. <u>Creditor Trust</u> means that certain trust established pursuant to this Plan and the Creditor Trust Agreement for the purposes, *inter alia,* of prosecuting or otherwise recovering, developing, and liquidating Assets of the Estate, resolving certain Claims and causes of action of the Debtor, and making distributions to holders of Allowed Claims and, if applicable, holders of Allowed Interests in accordance with the Plan.

2.22. <u>Creditor Trust Agreement</u> means that certain trust agreement to be entered into pursuant to the Plan, under which the Creditor Trust will be established. A true and correct copy of the Creditor Trust Agreement is attached hereto as Exhibit A.

2.23. <u>Creditor Trustee</u> means the person appointed by the Committee as Creditor Trustee pursuant to this Plan of the terms of the Creditor Trust Agreement.

2.24. <u>Debtor</u>: shall mean Primera Energy, LLC, the Debtor herein.

2.25. <u>Disclosure Statement</u>: The Disclosure Statement under 11 U.S.C. § 1125, filed by the Trustee in connection with this Plan, and as thereafter amended.

2.26. <u>Disputed Claim</u>: A Claim against the Debtor (a) as to which an objection has been filed on or before the deadline for objecting to a Claim by the Debtor or any party in interest and which objection has not been withdrawn or resolved by entry of a Final Order, (b) a Claim that has been asserted in an amount greater than that listed in the Schedules as liquidated in an amount and not disputed or contingent, or (c) that the Schedules list as contingent, unliquidated or disputed. A claim shall *not* be considered a Disputed Claim if such claim has previously been allowed by order of the Bankruptcy Court.

2.27. <u>Disputed Claims Reserve</u>: A segregated account to be held in trust by the Trustee for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan.

2.28. <u>Distribution</u>: The property required by the Plan to be distributed to the holders of Allowed Claims.

2.29. <u>Effective Date</u>: shall mean and occur on the later of the thirtieth (30th) day after entry of the Confirmation Order, unless the effectiveness of the Confirmation Order has been

stayed or vacated by a court of appropriate jurisdiction, in which case the Effective Date shall be the later of the 30th day after the entry of the Confirmation Order or such date thereafter when any stay of the effectiveness of the Confirmation Order has expired or otherwise terminated..

2.30.  Final Order: An order of the Bankruptcy Court as to which the time for appeal, review, *certiorari* proceeding, or other proceeding for review or rehearing has expired, or, if such an appeal has been filed, as to which no stay pending such appeal has been obtained.

2.31.  Fully Secured Claim: A Claim secured by a lien on property whose value exceeds the Allowed amount of that Claim pursuant to Section 506(a) of the Bankruptcy Code.

2.32.  General Unsecured Claims: shall mean an Unsecured Claim as defined in Article II herein.

2.33.  Insider: shall have the meaning given such term under the provisions of the Code and shall include any present or past owners of interests, memberships or stock in the Debtor.

2.34.  Interest Owner: Any ownership interest in the Debtor.

2.35.  Investor: Any Person who contracted with Debtor to obtain a beneficial interest in any oil or gas lease or property.

2.36.  Lien: Any charge against or interest in property to secure payment of a debt or performance of an obligation, and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust, and statutory lien as defined in Section 101 of the Code..

2.37.  Person: An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a government or any agency or subdivision thereof or any other entity.

2.38.  Petition Date: The date on which the Debtor filed its voluntary chapter 11 petition, being June 3, 2015.

2.39.  Plan: This Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, either in its present form, including exhibits, or as it may be altered, amended, or modified from time to time.

2.40.  Plan Administration Committee: The Plan Administration Committee ("PAC") created in the Creditor Trust Agreement consisting of no more than three (3) creditors from the existing Committee of Unsecured Creditors to be selected by the Committee of Unsecured Creditors and disclosed at the hearing on Confirmation.

2.41.  Plan Participants: Trustee, his employees and advising professionals.

2.42. <u>Priority Claim</u>: Any Claim (other than an Administrative Expense Claim or Ad Valorem Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code including, but not limited to, a Claim of an employee of a Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned before the Petition Date (to the extent of $12,475 per employee) and governmental tax claims afforded priority under section 507(a) of the Bankruptcy Code (other than Ad Valorem Tax Claims).

2.43. <u>Property</u>: shall mean any personal or real property, tangible or intangible, in which the Debtor owns any interest or rights other than cash, notes receivable, claims or causes of action, judgments or avoidance actions.

2.44. <u>Proponent</u>: shall mean the Trustee..

2.45. <u>Pro Rata</u>: Proportionately, based on the percentage amount of the distribution made on account of a particular Allowed Claim and the distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included.

2.46. <u>Sale Proceeds</u>: Those funds received from a sale of any Property.

2.47. <u>Schedules</u>: The Schedules of Assets and Liabilities, Statement of Financial Affairs and Statement of Executory Contracts, as each may be amended, filed by the Trustee for the Debtor with the Bankruptcy Court in accordance with section 521(l) of the Bankruptcy Code.

2.48. <u>Secured Claim</u>: A Claim to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's estate securing such Claim. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

2.49. <u>Tax Claim</u>: Claims of the kind specified in Section 507(a)(8) of the Code.

2.50. <u>Unsecured Claim</u>: This class consists of all Allowed Claims held by any creditor of the Debtor who holds no lien rights or other rights against specific property of the Debtor securing the payment of their claim, an Unsecured Deficiency Claim as defined herein, claims which are not entitled to priority pursuant to 11 U.S.C. § 507, and any claims arising from the Debtor's rejection of executory contracts.

2.51. <u>Unsecured Deficiency Claim</u>: A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Debtor's estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code, unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section

1111(b) of the Bankruptcy Code to have such Claim treated as a secured claim to the extent allowed.

2.52.   The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise.   Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include each of the masculine, feminine and the neuter genders. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. In this Plan, "including" means "including without limitation".

2.53.   A term used in this Plan, not defined in this Plan and defined in the Bankruptcy Code has the meaning assigned to it in the Bankruptcy Code.   A term used in this Plan, not defined in this Plan, not defined in the Bankruptcy Code and defined in the Bankruptcy Rules has the meaning assigned to it in the Bankruptcy Rules

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests of the Debtor are classified as follows:

3.1.   **Class 1: ALLOWED PRIORITY CLAIMS.** This class consists of the Allowed Priority Claims as those terms are defined in Article II hereinabove, other than Allowed Claims for Administrative Expense or Ad Valorem Tax Claims.

3.2.   **Class 2: ALLOWED AD VALOREM TAX CLAIMS.** This class consists of the Allowed Ad Valorem Tax Claims as those terms are defined in Article II hereinabove.

3.3.   **Class 3:   Allowed Secured Claims of Holders of Valid Mineral Liens (McMullen County, Texas).**   This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens pursuant to Chapter 56, Texas Property Code, against the Debtor's oil, gas and mineral lien interests in McMullen County, Texas.

3.4.   **Class 4:   Allowed Secured Claims of Holders of Valid Mineral Liens (Gonzales County, Texas).**   This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens pursuant to Chapter 56, Texas Property Code, against the Debtor's oil, gas and mineral lien interests in Gonzales County, Texas.

3.5.   **Class 5: ALLOWED CLAIMS OF ASSUMED EXECUTORY CONTRACT OR LEASE CLAIMANTS.** This class consists of the Allowed Claims of all persons holding executory contracts and/or lease agreements with the Debtor which were assumed or assumed and modified by the Debtor including the Assumed Leases.

3.6.    **Class 6:** **ALLOWED GENERAL UNSECURED CREDITORS CLAIMS** .  This class consists of all Allowed General Unsecured Claims as those terms are defined in Article II hereinabove.

3.7.    **Class 7:**  **Allowed Investor Claims:**  This class consists of all Allowed Claims filed by any Person arising from an investment in any one or more oil and gas venture involving the Debtor.

3.8.    **Class 8:** **ALLOWED CLAIMS OF INTEREST OWNERS.**  This class consists of all Allowed Claims of Interest Owners in the Debtor.

## ARTICLE IV.

## UNCLASSIFIED CLAIMS

4.1.    **Administrative Claims.**

(a)    Time for Filing Administrative Claims.    Subject to subsection (b) hereafter, the Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Effective Date, must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must include at a minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis for the Claim.  Failure to timely and properly file and serve the request required under this section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Proponents, and the Creditor Trustee within twenty one (21) days afer the filing of the applicable request for payment of an Administrative Claim.

(b)    Time for Filing Fee Claims.  Each professional who holds or asserts an Administrative Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptyc Court and serve on all parties required to receive such notice an application for allowance of such Claim within forty-five (45) days after the Effective Date.  Failure to timely file and properly file an applicatoin as required under this section shall result in the Administrative Claim being forever barred and discharged.  No such claim will be deemed Allowed until an order allowing the Claim becomes a Final Order.  Objections to such applications must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Proponents, and the Creditor Trustee within twenty (20) days afer the filing of the applicable request for payment of an Administrative Claim.

(c)    Payment of Allowed Administrative Claims.  Except to the extent that a holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the

application of any retainer held by such holder, Cash from the Debtor or Creditor Trust equal to the Allowed amount of such Claim.

(d)     Secured Administrative Expense Claims.  Secured claims arising from the provision of post-petition goods or services shall be paid from the proceeds of sale of the oil and gas leasehold interest against which the lien attaches prior to the payment of any other secured claim save and except applicable ad valorem tax liens and such payment shall constitute a release of the lien upon payment.

(e)     The Creditor Trust shall hold a reserve in the amount of not less than the total of the then timely filed and unpaid administrative expense claims following the Confirmation Date.  This reserve shall be used by the Trustee to pay any administrative obligations ultimately Allowed.  Upon payment of all Allowed Addministrative Claims, any funds remaining in this reserve account shall be used for the payment of other Allowed Claims in accordance with the priority established in this Plan.

4.2.    **U. S. Trustee Fees.**  The Debtor or Creditor Trust shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the most recent quarterly invoice prior to the Confirmation Date will be paid in full within thirty (30) days after the Effective Date.  After the Effective Date, the Creditor Trust shall pay the United States Trustee quarterly fees as they accrue until the Bankruptcy Case is closed.

## ARTICLE V.

## IDENTIFICATION OF CLAIMS AND
## EQUITY INTERESTS IMPAIRED BY THE PLAN

5.1.    Unimpaired Classes: Classes 1,  2 and 5 are not impaired classes under the Plan and are not entitled to vote to accept or reject the Plan.

5.2.    Impaired Classes to Vote on Plan:  The Claims and Interests specified in Classes 3, 4, 6, 7 and 8 are *impaired* and are *entitled to vote* to accept or reject the Plan.

5.3.    Controversy Concerning Impairment:  In the event of a controversy as to whether any Claim or Equity Interest or class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine the controversy.

# ARTICLE VI.

## PROVISIONS FOR TREATMENT OF
## ALLOWED PRIORITY CLAIMS (CLASS 1)

6.1.    Full Payment:  Unless otherwise provided herein, the holder of a Class 1 Allowed Priority Claim shall be paid in full on the later of the Effective Date or the due date after final court approval (if required by law), or paid on other agreed terms.

6.2.    Impairment:  Priority Claims in Class 1 are not impaired under the Plan.

# ARTICLE VII.

## PROVISIONS FOR TREATMENT OF
## ALLOWED AD VALOREM TAX CLAIMS (CLASS 2)

7.1.    Ad Valorem Tax Claims:  The Class 2 Ad Valorem Tax Claims which are secured by virtue of TEX. PROP. TAX CODE § 32.01, *et. seq.*, shall retain their liens against the property of the Debtor, including any liens for real estate or personal property taxes accruing after the filing of this bankruptcy for tax years through and ending on December 31, 2015, until payment in full of the applicable tax years.  Each Allowed Ad Valorem Tax Claim shall be paid in full upon Closing of a sale of the respective Property.  Such liens shall be fully satisfied at Closing for any taxes that are due but the taxes shall be pro-rated for any ad valorem taxes against the Property that are not yet due and payable.  Ad Valorem Taxes assessed for the year 2016 and each subsequent year thereafter are to be timely paid when otherwise due and are subject to state court collection without recourse to the Bankruptcy Court after confirmation of this Plan.

7.2.    Impairment: The Class 2 Claims are not impaired under the Plan.

# ARTICLE VIII.

## PROVISIONS FOR THE TREATMENT OF ALLOWED
## SECURED CLAIMS OF HOLDERS OF VALID MINERAL LIENS
## (McMullen County, Texas) (CLASS 3)

8.1.    Allowed Secured Claims of Holders of Valid Mineral Liens (McMullen County, Texas).    This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens under Chapter 56, Texas Property Code, against the oil, gas and mineral leases of the Debtor in McMullen County, Texas.

8.2.    Treatment:    (A) The property securing these claims was or will be sold during the administration of the Bankruptcy proceeding following motion, notice and entry of an order from the U. S. Bankruptcy Court.   The liens of Allowed Class 3 Claims attach to the proceeds of

sale and the claims will be paid in full from such funds to the extent funds are available. In the event the funds are not sufficient to pay all such allowed lien claims in full, they will be paid pro-rata to the extent of such funds. In the event the proceeds exceed the total of all unpaid allowed lien claims, the funds in excess shall be used utilized to pay other Allowed Claims pursuant to this Plan.

(B) In the event net proceeds from the sale of the Debtor's McMullen County, Texas, properties are insufficient to pay the Class 3 Claims in full, the provisions of Article XIV herein shall apply.

© To the extent not paid pursuant to (A) or (B) herein, the unpaid balance of such claims shall be treated as Class 6 Unsecured Claims.

    8.3.   <u>Impairment.</u>   The holders of Class 3 Claims are impaired under the Plan.

## **ARTICLE IX.**

## **PROVISIONS FOR THE TREATMENT OF ALLOWED SECURED CLAIMS OF HOLDERS OF VALID MINERAL LIENS (Gonzales County, Texas) (CLASS 4)**

    9.1.   <u>Allowed Secured Claims of Holders of Valid Mineral Liens (Gonzales County, Texas).</u>  This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens under Chapter 56, Texas Property Code, against the oil, gas and mineral leases of the Debtor in Gonzales County, Texas.

    9.2.   <u>Treatment:</u>   (A) The property securing these claims was or will be sold during the administration of the Bankruptcy proceeding following motion, notice and entry of an order from the U. S. Bankruptcy Court. The liens of Allowed Class 4 Claims attach to the proceeds of sale and the claims will be paid in full from such funds to the extent funds are available. In the event the funds are not sufficient to pay all such allowed lien claims in full, they will be paid pro-rata to the extent of such funds. In the event the proceeds exceed the total of all unpaid allowed lien claims, the funds in excess shall be used utilized to pay other Allowed Claims pursuant to this Plan.

(B) In the event net proceeds from the sale of the Debtor's Gonzales County, Texas, properties are insufficient to pay the Class 4 Claims in full, the provisions of Article XIV herein shall apply.

© To the extent not paid pursuant to (A) or (B) herein, the unpaid balance of such claims shall be treated as Class 6 Unsecured Claims.

    9.3.   <u>Impairment.</u>   The holders of Class 4 Claims are impaired under the Plan.

# ARTICLE X

## PROVISIONS FOR TREATMENT OF
## ASSUMED EXECUTORY CONTRACT OR LEASE CLAIMANTS (CLASS 5)

10.1.    Allowed Claims of Assumed Executory Contract or Lease Claimants.    This class consists of the Allowed Claims of all persons holding executory contracts and/or lease agreements with the Debtor which were assumed or are assumed at Confirmation by the Debtor.

10.2.    Treatment: Class 5 claims for Assumed Executory Contracts or Unexpired Leases shall be paid in accordance with the terms and conditions of each lease agreement, as modified, with Bankruptcy Court approval, or as set out herein.  However, *unless otherwise agreed by the Debtor and the counter party* to any Assumed Agreement as more fully set out herein,

(a)    all cure payments that may be required by section 365(b)(1) of the Bankruptcy Code shall be made on or before the Effective Date, and

(b)    in the event of a dispute regarding the amount or timing of any cure payments, the ability of Reorganized Debtor to negotiate for and accept adequate assurance of future performance or any other matter pertaining to assumption, the dispute shall be resolved by the Bankruptcy Court and Reorganized Debtor shall negotiate for adequate assurance of future performance, if any, and accept such assurance as may be negotiated and or required by the Final Order resolving such dispute on the terms and conditions of such Final Order.

10.3.    Rejection of Executory Contracts and Unexpired Leases:  As of the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor not assumed herein, previously assumed or subject to pending motions to assume are *rejected* by the Debtor in accordance with section 365 of the Bankruptcy Code.  The executory contracts and/or unexpired leases which are *assumed*, include, but are not limited to, all joint operating agreements to which Debtor is a party for which the purchaser of Debtor's interest in that property agrees to pay any cure claims required for assumption.

10.4.    Claims Based on Rejection of Executory Contracts and Unexpired Leases:  All proofs of claim with respect to Claims arising from the rejection of an executory contract or unexpired lease shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving the rejection, or (b) the Effective Date.  Any Claims not filed within such times shall be forever barred from assertion against the Debtor, its estate or their property.  Such rejection claims if allowed shall be treated as Allowed Class 11 Claims.

10.5.    Impairment:  The Class 5 claims are not impaired under the Plan.

# ARTICLE XI

## PROVISIONS FOR THE TREATMENT OF
## ALLOWED GENERAL UNSECURED CLAIMS (CLASS 6)

11.1.    Allowed General Unsecured Claims.  This class consists of all Allowed General Unsecured Claims as those terms are defined in Article II herein above.

11.2.    Treatment: The holders of Allowed Class 6 Claims shall receive up to the full amount of their Allowed Claims, pro rata, from any net proceeds held, received, or recovered by the Debtor's estate and/or the Creditor Trust, AFTER payment in full of all Unclassified Claims and All Allowed Class 1, 2, 3, 4 and 5 Claims.

11.3.    Impairment: The Class 6 Claims are impaired under the Plan.

## ARTICLE XII

## PROVISIONS FOR THE TREATMENT OF
## ALLOWED INVESTOR CLAIMS (CLASS 7)

12.1.    Allowed Investor Claims.  This class consists of all Allowed Claims filed by any Person arising from an investment in any one or more oil and gas venture involving the Debtor.

12.2    Treatment.    Subject to the provisions of Article XIV herein, the holders of Allowed Class 7 Claims shall receive up to the full amount of their Allowed Claims, pro rata, from any net proceeds held, received, or recovered by the Debtor's estate and/or the Creditor Trust, AFTER payment in full of all Unclassified Claims and All Allowed Class 1, 2, 3, 4, 5 and 6 Claims.

12.3.    Impairment: The Class 7 Claims are impaired under the Plan.

## ARTICLE XIII.

## PROVISIONS FOR THE TREATMENT OF
## ALLOWED CLAIMS OF INTEREST OWNERS (CLASS 8)

13.1.    Interests.   This class consists of all Allowed Claims of Interest Owners in the Debtor.

13.2.    Treatment: The holders of Allowed Class 8  Claims shall receive nothing of value.

## ARTICLE XIV.

## INVESTOR CONTRIBUTIONS OR ACTIONS

Upon the closing of a sale or transfer of any of the oil and gas leases of the Debtor, and after a determination of the amount of net sale proceeds received from each respective property, if the respective net sales proceeds are not sufficient to pay the Allowed Class 3 or Class 4 Claims in full (respectively), the Trustee, or Creditor Trustee (as appropriate) shall request payment from the Investors in each property as set out herein:

1.      Only the Investors in a property for which the net sales proceeds are insufficient to pay all Allowed Secured Claims secured by that property shall be subject to payment requests;

2.      The requests shall be made property by property and there are no cross property obligations;

3.      Each Investor shall be requested to pay an amount equal to the net amount required to pay such deficiency amount multiplied by their proportionate investor ownership interest claimed.  For example, each investor would be requested to pay the same amount they would have owed under an Authorization for Expenditure under normal oil and gas accounting practices.

4.      Payment on the request would be due on or before 30 days following the mailing of the request to the address for the investor as reflected in the Debtor's books and records.

5.      In the event any Investor timely pays all amounts requested under this provision, such investor shall have no further obligations to the Debtor's estate nor the Creditor Trust and, if otherwise valid, shall retain any Allowed Class 7 Claim they hold.

6.      In the event any Investor fails to timely pay all amounts requested under this provision, such Investor shall remain liable for all amounts and claims which may or could be asserted against them by virtue of the investment documents they executed, shall retain any defenses to same, and shall have any Class 7 Claim asserted by them disallowed without further action by the Court.  The Trustee, Creditor Trustee, or any holder of an unpaid Allowed Class 3 or 4 Claim shall retain and is authorized to enforce any claim or action they may hold against any Investor who fails to pay all requested amounts and such claims are not limited by any provision herein.

# ARTICLE XV

## MEANS FOR EXECUTION OF THE PLAN

15.1.    <u>Sale of Property.</u>   This Plan contemplates that Trustee will sell the Property in a reasonable manner and use best efforts to obtain the highest price and consideration possible for such sale.  The sale shall be conducted in accordance with a Motion to Sell Under 11 U.S.C. § 363 when and if granted by the Bankruptcy Court.

15.2.    <u>Litigation Claims.</u>   All claims and causes of action, whether now pending or asserted or not, shall be retained and pursued to the extent reasonable and all net recoveries from such actions shall be subject to this Plan.

15.3.    <u>Investor Claims.</u>   Debtor is a party to agreements with each Investor in the oil and gas properties.  These agreements give the Debtor, and others, certain rights and responsibilities.  These include an obligation to pay the costs incurred in connection with the wells invested in.  Subject to Article XIV herein, Debtor and/or the Creditor Trust shall retain the right to seek enforcement of these agreements.

15.4.    <u>Vesting of Assets.</u>  The Property, claims, causes of action, and assets of the Debtor's bankruptcy estate shall be transferred to and vest in the Creditor Trust on the Effective Date free and clear of all Claims, but subject to the obligations set forth in this Plan.

15.5.    <u>Distributions.</u>   The Creditor Trust may distribute available funds in accordance with the Plan.

15.6.    <u>Creditor Trust.</u>

A.    On the Effective Date the Creditor Trustee shall execute the Creditor Trust Agreement as approved by the Bankruptcy Court and the Primera Creditor Trust shall be formed.

B.    Except as otherwise provided herein, the Creditor Trustee (in his capacity as Creditor Trustee and not in his individual capacity) shall assume liability for and the obligations to make the distributions required to be made under the Plan and the Creditor Trust Agreement, but shall not otherwise assume liabilities of the Debtor.

C.    The Court shall create the Creditors Trust and the Committee shall designate the initial Creditor Trustee for the purpose of receiving title to all Property and assets and funds the Debtor transfers to the Creditor Trust, including but not limited to, and except as provided in this Plan, all interests in real and personal property, any and all claims and causes of action, rights, claims, and demands against any third parties, investors, individuals, or insiders, that the Debtor owns or has an interest in or can ascertain any fashion, whether pre-petition or post-petition, including but not limited to actions under sections 544 through 550 of the Bankruptcy Code, to

recover assets for the Creditor Trust and the benefit of the Creditors, and any other consideration to be received by the Creditors pursuant to the terms of the Plan.

D.    The Creditor Trustee shall have all the power and authority to perform any acts set out in the Trust Agreement or allowed to a Trustee under the Texas Trust Act.

E.    The Creditor Trustee shall not be liable for actions taken or omitted in his capacity as the Creditor Trustee, except those acts arising out of his own fraud or willful misconduct.    The Creditor Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Creditor Trustee. Any indemnification claim of the Creditor Trustee shall be satisfied from the assets of the Creditor Trust.

F.    The Creditor Trust shall become effective upon the Effective Date. Thereafter, the Creditor Trust shall remain and continue in full force and effect until the Property has been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Creditor Trust have been fully paid and all remaining income and proceeds of the Trust Property have been distributed in payment of Allowed Claims and, if applicable, Allowed Interests pursuant to the provisions of the Plan. The Creditor Trust will terminate at the end of five years from the Effective Date; provided, that upon complete liquidation of the Trust Property and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Creditor Trust pursuant to the Plan prior to such date, the Creditor Trustee may, with approval of the Bankruptcy Court, sooner terminate the Creditor Trust; and provided further, that prior to the end of five years from the Effective Date the Creditor Trustee or any beneficiary of the Creditor Trust may move the Bankruptcy Court to extend the termination date of the Creditor Trust after notice to interested parties and an opportunity for hearing. Upon termination of the Creditor Trust, the Creditor Trustee will be forever discharged and released from all powers, duties, responsibilities and liabilities pursuant to the Creditor Trust.

G.    The Creditor Trust will have the right to retain the services of attorneys, accountants and other agents that, in the discretion of the Creditor Trustee, are necessary to assist the Creditor Trust in the performance of its duties. The fees and expenses of such professionals will be paid by the Creditor Trust in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court.    The Creditor Trustee shall be entitled to compensation for his services at a rate not to exceed $500 per hour and for reimbursement of expenses which shall be paid by the Creditor Trust in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court.

H.    The Creditor Trust to be established for the benefit of Creditors is intended to qualify as a liquidating trust for federal income tax purposes. All items of income, deduction, credit or loss of the Creditor Trust shall be allocated for federal, state and local income tax purposes among the Holders of Allowed Claims and Interests.

I.    The Plan Administration Committee ("PAC") shall be created in and as set out in the Creditor Trust Agreement.  The members of the Committee shall be the initial members of the PAC.  The PAC shall have standing as a party in interest to enforce the terms and provisions of the Creditor Trust Agreement and this Plan.  The PAC may take action by majority vote of its members.  The PAC shall have the authority to retain counsel if necessary to resolve a dispute with the Trustee and the reasonable fees and expenses of such counsel shall be a cost of administration of the Creditor Trust.  The members of the PAC shall not be liable for any act done or omitted to be done as a member of the PAC while acting in good faith and the Creditor Trust shall indemnity and hold harmless the members of the PAC from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses arising out of or due to their actions or omissions with respect to the Creditor Trust; provided, however that no such indemnification will be made to such persons for actions or omissions that constitute willful misconduct, gross negligence or fraud.

## ARTICLE XVI

### THE CREDITOR TRUST

The Creditor Trust shall exist after the Effective Date with all the powers of a trust under applicable Texas law.  The Creditor Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on and after the Effective Date.  After the Effective Date, the Creditor Trust will own the Trust Property and shall have the flexibility to conduct any operations necessary to liquidate the Trust Property and to enhance or preserve the value of the Trust property consistent with the expeditious and beneficial liquidation of such property.

## ARTICLE XVII.

### EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

17.1.    Impaired Classes to Vote:  Each impaired class of Claims and Interests shall be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim that has not been temporarily allowed for purposes of voting on the Plan may vote the Disputed Claim in an amount equal to the portion, if any, of the Claim shown as fixed, liquidated and undisputed in the Debtor's Schedules.

17.2.    Acceptance by Class of Creditors:  A class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or Equity Interests of the class that have accepted or rejected the Plan.

17.3.    Cramdown:  If any impaired class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy

Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

# ARTICLE XVIII.

## PROVISIONS FOR RESOLUTION AND TREATMENT OF PREFERENCES, FRAUDULENT CONVEYANCES, AND DISPUTED CLAIMS

18.1. <u>Preferences and Fraudulent Conveyances</u>: The Debtor, Committee, or the Creditor Trust, shall be the only parties authorized to object to Claims and to pursue actions to recover preferences and fraudulent conveyances or any other transaction voidable under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions"). Unless Debtor or Creditor Trustee consents, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue such Avoidance Actions.

18.2. <u>Objections to Claims</u>: The Debtor, Committee, Creditor Trust or any interested Person shall have the authority to object and contest the allowance of any Claims filed with the Bankruptcy Court prior to the Effective Date. Claims listed as disputed, contingent or unliquidated on the Schedules are considered contested or Disputed Claims, except Claims otherwise treated by the Plan or previously allowed or disallowed by Final Order of the Bankruptcy Court.

18.3. <u>Disputed Claims Reserve</u>: The Debtor, Committee, Creditor Trust or any interested Person shall retain the right to litigate Disputed Claims to determine the extent to which the Disputed Claim should be allowed. During the pendency of such litigation, the Debtor or Creditor Trust shall escrow into a Disputed Claims Reserve such amounts as may be fixed by agreement, by provisional allowance in the Confirmation Order, or by other order of the Bankruptcy Court, unless other depository arrangements or terms are directed by order of the Bankruptcy Court. The Disputed Claims Reserve shall be held in trust by the Debtor for the benefit of the holders of Disputed Claims pending a determination of entitlement to the Disputed Claims under the terms of the Plan and for the holders of Allowed Claims whose Distributions are unclaimed. At such time as a Disputed Claim becomes an Allowed Claim, that shall be deemed the Effective Date for purposes of such Claim and the Distributions allowed for such Allowed Claims shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim. If a Disputed Claim is disallowed, the Distributions provided for the Claim shall be released to the Debtor for distribution to other creditors in accordance with this Plan.

18.4. <u>Investment of Funds</u>: All Cash held in the Disputed Claims Reserve and the reserve established for Administrative Expense Claims shall be invested in those investments described in section 345 of the Bankruptcy Code. The Creditors Trust shall be responsible for the making of Distributions from the reserves after the Effective Date.

18.5.   Unclaimed Distributions:  In the event any Distributions under the Plan remain unclaimed as of one (1) year after the Effective Date such Distributions shall be released to Reorganized Debtor and the obligation to make the Distribution deemed fulfilled.

## ARTICLE XIX.

## PROVISIONS FOR RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE ESTATE

19.1.   Causes of Action:  All claims recoverable under Chapter 5 of the Bankruptcy Code, all claims against third parties on account of any indebtedness, and all other claims owed to or in favor of Debtor to the extent not specifically compromised and released pursuant to this Plan or an agreement referred to or incorporated herein, shall be preserved and retained for enforcement by Debtor or Creditors Trust after the Effective Date.  In the event of conversion to a Chapter 7 proceeding, such claims shall be preserved and retained for enforcement by the Chapter 7 Trustee, subject to applicable limitations periods.

19.2.   Legally Binding Effect; Discharge of Claims and Equity Interests:  The provisions of this Plan shall (a) bind all Creditors and Equity Interest holders, whether or not they accept this Plan, and (b) discharge Debtor from all debts that arose before the Petition Date.  In addition, the distributions of Cash and securities provided for under this Plan shall be in complete satisfaction, discharge and release of all Claims against and Equity Interests in Debtor or any of its assets or properties, including any Claim or Equity Interest accruing after the Petition Date and before the Effective Date.  On and after the Effective Date, all holders of Claims and Equity Interests shall be precluded from asserting any Claim against Reorganized Debtor or its assets or properties based on any transaction or other activity of any kind that occurred before the Petition Date.  The Distributions provided for Creditors and Equity Interest holders shall not be subject to any Claim by another Creditor or Equity Interest holder by reason of an assertion of a contractual right of subordination.

## ARTICLE XX.

## RETENTION OF JURISDICTION

20.1.   Jurisdiction:  Until this Chapter 11 Case is closed, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including that necessary to ensure that the purpose and intent of this Plan are carried out and to hear and determine all Claims set forth above that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against Debtor and to enforce all causes of action that may exist on behalf of Debtor.  Nothing contained in this Plan shall prevent Reorganized Debtor from taking such action as may be necessary in the enforcement of any cause of action that may exist on behalf of Debtor and that may not have been enforced or prosecuted by the Debtor.

20.2. <u>Examination of Claims</u>: Following the Confirmation Date, the Bankruptcy Court shall further retain jurisdiction to decide disputes concerning the classification and allowance of the Claim of any Creditor and the re-examination of Claims that have been allowed for the purposes of voting, and the determination of such objections as may be filed to Creditors' Claims. The failure by Debtor, Trustee, or Creditor's Trust to object to, or to examine, any Claims for the purposes of voting shall not be deemed a waiver of its right to object to, or to re-examine, the Claim in whole or in part.

20.3. <u>Determination of Disputes</u>: The Bankruptcy Court shall retain jurisdiction after the Confirmation Date to determine all questions and disputes regarding title to the assets of Debtor's estate, disputes concerning the allowance of Claims, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, for Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

20.4. <u>Additional Purposes</u>: The Bankruptcy Court shall retain jurisdiction for the following additional purposes after the Effective Date:

(a)     to modify this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)     to assure the performance by Reorganized Debtor of its obligations to make Distributions under this Plan;

(c)     to enforce and interpret the terms and conditions of this Plan;

(d)     to adjudicate matters arising in this bankruptcy case, including matters relating to the formulation and consummation of the Plan;

(e)     to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of Reorganized Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as this Bankruptcy Court may deem necessary;

(f)     to enter an order terminating this Chapter 11 Case;

(g)     to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

(h)     to allow applications for fees and expenses pursuant to section 503(b) of the Bankruptcy Code; and

(I)     to decide issues concerning federal tax reporting and withholding which arise in connection with the confirmation or consummation of this Plan.

# ARTICLE XXI

## DEFAULT UNDER PLAN

21.1.  <u>Asserting Default</u>: If Debtor defaults under the provisions of this Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents shall provide independent bases for relief), any Creditor or party in interest desiring to assert a default shall provide the Debtor with written notice of the alleged default.

21.2.  <u>Curing Default</u>:  Except as otherwise set out herein, the Debtor or Trustee shall have thirty (30) days from receipt of the written notice in which to cure an alleged breach or default under this Plan, including any default under any Related Document.  The notice shall be delivered by *United States certified mail, postage prepaid, return receipt requested,* and by *regular, first class mail, postage prepaid,* addressed to the Trustee at the following address or at such other address as is provided in writing by Trustee:

> JASON R. SEARCY
> Searcy & Searcy, P.C.
> P.O. Box 3929
> Longview, Texas 75606
> (903) 757-9559 Facsimile

If the default is not cured, any Creditor or party in interest may thereafter file with the Bankruptcy Court and serve upon Trustee a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.

# ARTICLE XXII

## MISCELLANEOUS PROVISIONS

22.1.  <u>Compliance with Tax Requirements and Limits on Distribution</u>:  In connection with this Plan, Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions shall be subject to such withholding and reporting requirements.  In particular, but without limitation, no distribution under this Plan to any creditor or Claim Holder shall be made unless the Reorganized Debtor has sufficient information to file all Internal Revenue Service reports required with respect to such payment or such creditor or Claim Holder shall complete and return to the Reorganized Debtor an Internal Revenue Service Form W-9 which shall be provided by Reorganized Debtor within a reasonable time following written request by the creditor or Claim Holder.

22.2. <u>Amendment of the Plan</u>: This Plan may be amended by the Trustee before or after the Effective Date as provided in section 1127 of the Bankruptcy Code.

22.3. <u>Revocation of Plan</u>: Debtor reserves the right to revoke and withdraw this Plan at any time before the Confirmation Date.

22.4. <u>Effect of Withdrawal or Revocation</u>: If Debtor revokes or withdraws this Plan before the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other person, or to prejudice in any manner the rights of Debtor or any person in any further proceedings involving Debtor.

22.5. <u>Due Authorization By Creditors</u>: Each and every Creditor who elects to participate in the Distributions provided for herein warrants that it is authorized to accept in consideration of the Claim against Debtor the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

22.6. <u>Filing of Additional Documentation</u>: On or before the Effective Date, Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effect and further evidence the terms and conditions of this Plan.

22.7. <u>Implementation</u>: The Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

22.8. <u>Ratification</u>: The Confirmation Order shall ratify all transactions effected by the Debtor during the pendency of this Chapter 11 Case.

22.9. <u>Limitation of Liability in Connection with the Plan, Disclosure Statement and Related Documents and Related Indemnity</u>:

(a) The Plan Participants shall neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement or the Confirmation Order, including solicitation of acceptances of the Plan; *provided, however,* that the provisions of this Section 22.9(a) shall have no effect on the liability of any Plan Participant that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(b)    The Creditor Trust shall indemnify each Plan Participant, hold each Plan Participant harmless from, and reimburse each Plan Participant for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by a Plan Participant arising from any liability described in this Section 22.9.

22.10.  _Termination of Committee:_  The Committee shall terminate on the later of the Effective Date or the final termination of any appeal, contested matter or adversary proceeding to which the Committee is or may become a party.  Any claims against the Committee, its members or professionals for their actions or omissions while serving the Committee shall be released and waived upon termination of the Committee pursuant to this Plan.

22.11.  _Section Headings:_  The section headings used in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

DATED:   January 5, 2016.

Respectfully submitted,

PRIMERA ENERGY, LLC

By:   _/S/   Jason R. Searcy, Trustee_
          Jason R. Searcy
          Chapter 11 Trustee

TRUST AGREEMENT

FOR THE PRIMERA  CREDITORS' TRUST

1



EXHIBIT

*A*

# TRUST AGREEMENT FOR THE
# PRIMERA CREDITOR'S TRUST

This Trust Agreement for the Primera Creditor's Trust (the "Trust Agreement"), is made as of _____ by and between Primera Energy, LLC ("Primera"), for the benefit of the Beneficiaries (as defined below) entitled to the Trust Property (as defined below), and _____, as the Plan Trustee (the "Plan Trustee").

## Recitals

This Trust Agreement is entered into to facilitate implementation of the Plan. Under the Plan, the Trust Property will be transferred to the Trust created and evidenced by this Trust Agreement so that (i) the Trust Property can be held in trust for the benefit of the Beneficiaries as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d) for the objectives and purposes set forth in the Plan and this Trust Agreement, (ii) the Claims can be fully resolved, (iii) Distributions can be made in accordance with the Plan, (iv) the Trust Property can be liquidated, and (v) administrative services relating to the activities of the Trust and relating to the implementation of the Plan can be performed by the Plan Trustee. The Plan Trustee will make continuing efforts to dispose of the Trust Property, make timely Distributions, and not unduly prolong the duration of the Trust.

## Declaration of Trust

In order to declare the terms and conditions of this Trust Agreement, and in consideration of the stated premises, the confirmation of the Plan under the Bankruptcy code, and of other good and valuable consideration, the receipt of which is acknowledged, Primera and the Plan Trustee have executed this Trust Agreement for the benefit of the respective Beneficiaries entitled to the Trust Property, and, at the Beneficiaries' direction (because the transfer of title to undivided interests in each of the Trust Property to the Beneficiaries, and the transfer of those interests by the Beneficiaries to the Trust, would be impractical), absolutely and irrevocably assign to the Plan

2

Trustee, its heirs, successors, or assigns, all right, title, and interest of in and to the Trust Property in the form and manner provided for in the Plan:

(i)     to have and to hold unto the Plan Trustee and its heirs, successors, and assigns:

(ii)    in trust under and subject to the terms and conditions set forth in this Trust Agreement and for the benefit of the Beneficiaries of the Trust (as their respective interest may appear in accordance with the Plan and this Trust Agreement), and for the performance of and compliance with the terms of the Plan and this Trust Agreement;

(iii)   provided, however, that on termination of the Trust in accordance with Article VIII, this Trust Agreement shall cease, terminate, and be of no further force and effect.

IT IS FURTHER COVENANTED AND DECLARED that the Trust Property is to be held and distributed by the Plan Trustee subject to the further covenants, terms, and conditions set forth below.

## ARTICLE I
### Definitions

**1.1     Definitions of Terms**.  All capitalized terms not otherwise defined in this Trust Agreement have the meanings ascribed to them in the Plan.  Any capitalized term used in this Trust Agreement that is not defined in the Plan have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, whichever is applicable.

**1.2     General Rules of Interpretation and Construction**.  For purposes of this Trust Agreement, (i) any reference to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references to sections, articles, and exhibits are references to sections, articles, or exhibits to this Trust Agreement; (iii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Trust Agreement in its entirety and not to any particular portion of this Trust Agreement; (iv) captions and headings contained in this Trust Agreement are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of this Trust Agreement; (v) wherever appropriate from the context, each

3

term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; and (vi) the rules of construction outlined in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply to this Trust Agreement.

## ARTICLE II
## The Trust

**2.1** **Creation and Name**. There is hereby created the Trust, which shall be known as "Primera Creditors' Trust".

**2.2** **Objectives and Purposes**. The general purpose of the Trust established under the Trust Agreement is to provide a mechanism for the liquidation of the Trust Property, and to distribute the proceeds of the liquidation, net of all Claims, expenses, charges, liabilities, and obligations of the Trust, to the holders of Beneficial Interests and certain Allowed Claims and Equity Interests in accordance with the terms of the Plan. The Trust will not conduct or engage in any trade or business activities, other than those associated with or related to the liquidation of the Trust Property and the Distributions to the Beneficiaries. It is intended that the Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations sections 301.7701-4(d). In furtherance of that objective, the Plan Trustee shall make continuing best efforts to (i) dispose of the Trust Property, (ii) make timely Distributions, and (iii) not unduly prolong the duration of the Trust, all in accordance with this Trust Agreement. The purposes of the Trust include, but are not limited to the following:

(a) marshaling, liquidating, and distributing the Trust Property in an expeditious and orderly manner;

(b) performing the functions and taking the actions provided for or permitted by this Trust Agreement and in any other agreement executed by the Plan Trustee for the Trust pursuant to the Plan;

(c) prosecuting, settling, or abandoning the Rights of Action and other causes of action transferred and assigned to the Trust under the Plan as Trust Property and to distribute the

4

proceeds of any recoveries thereon in accordance with the terms of the Plan and this Trust Agreement; and

(d)    reconciling, objecting to, prosecuting, or settling all Claims and other causes of action against Primera to determine the appropriate amount of Distributions to the made to the Beneficiaries under this Trust Agreement.

**2.3    Acceptance.**    The Plan Trustee accepts the Trust imposed under the Trust Agreement, and agrees to observe and perform that Trust, on and subject to the terms and conditions set forth in the Plan and this Trust Agreement.

**2.4    Further Assurances.**    The Debtor (and any heirs, successors, or assigns) will, on reasonable request of the Plan Trustee, execute, acknowledge, and deliver such further instruments and do such further acts that may be necessary or proper to transfer to the Plan Trustee any portion of the Trust Property intended to be conveyed under this Trust Agreement in the form and manner provided for in the Plan and to vest in the Plan Trustee the powers , instruments, or funds in trust.

**2.5    Restrictions on Trust Property.**    The Trust shall not receive transfers of any listed stock or securities or any readily marketable assets, or any operating assets of a going business. Additionally, the Trust shall not receive transfers of any unlisted stock of a single issuer that represents 80 percent or more of the stock of that issuer, and shall not receive transfers of any general or limited partnership interests or limited liability company interests, other than those of Primera.

**2.6    Ownership by Plan Trustee.**    The Plan Trustee shall promptly record or register in its name, as Plan Trustee, or in the name or names of any nominee or Person in accordance with Article IV of this Trust Agreement, ownership of and title to all Trust Property received by it as Plan Trustee.  The Plan Trustee shall also comply with all laws regarding the evidencing of ownership of and title to any portion of the Trust Property that are necessary and appropriate and that the Plan Trustee determines are in the best interests of the Trust.

**2.7** **Incidents of Ownership**.  The Beneficiaries shall be the sole beneficiaries of the Trust, and the Plan Trustee shall retain only such incidents of ownership necessary to undertake the actions and transactions authorized under the Plan or this Trust Agreement.

# ARTICLE III
## The Plan Trustee

**3.1** **Number and Qualifications.**  Except as otherwise provided in this Trust Agreement, there shall be one Plan Trustee of the Trust.  The Initial Plan Trustee is the Person nominated by the Creditors Committee of Primera and approved by the Bankruptcy Court in accordance with the Plan.  The Plan Trustee shall not be required to post a fidelity bond or a surety, but may do so in the Plan Trustee's sole discretion.  All costs and expenses of procuring any fidelity bond or surety shall be paid as a Trust Cost.  The Plan Trustee shall be entitled to engage in such other activities as the Plan Trustee deems appropriate and that are not in conflict with the interests of the Trust, and the Plan Trustee shall devote such time that is necessary to fulfill all of its duties as Plan Trustee.

**3.2** **Action by Plan Trustee.**  The Trust shall be managed by the Plan Trustee, in accordance with the provisions set forth in this Agreement.

**3.3** **Binding Nature of Plan Trustee's Action**.  All actions taken and determinations made by the Plan Trustee in accordance with the provisions of the Plan or this Trust Agreement shall be final and binding on all holders of Beneficial Interests in the Trust.

**3.4** **Terms of Service**.  The Plan Trustee shall serve as the Plan Trustee for the duration of the Trust, subject to earlier death, resignation, or removal.

**3.5** **Resignation**.  The Plan Trustee may resign such position only by a written instrument.  The Plan Trustee shall designated a successor in writing with his resignation.  The Plan Trustee shall continue to serve as Plan Trustee after the filing of the resignation until the proposed

6

effective date, which shall be the effective date of appointment of a successor Plan Trustee in accordance with the applicable provisions of the Plan and this Trust Agreement. Any resignation of the Plan Trustee pursuant to this section shall also automatically constitute a resignation of the Plan Trustee as the sole officer and manager of the Debtor. Nothing contained in this section shall restrict the right to remove the Plan Trustee as provided in the Plan or this Trust Agreement.

**3.6    Removal**. The Plan Trustee may be removed from office only for (i) fraud, willful misconduct, or gross negligence in connection with his duties under the Plan, including the liquidation of the Debtor and the Trust Property; (ii) a physical or mental disability that substantially prevents the Plan Trustee from performing its duties under the Plan; or (iii) cause, which shall include a breach of fiduciary duty or an unresolved conflict of interest, other than as specified in the foregoing clauses (i) and (ii). After removal pursuant to this section, the Plan Trustee shall continue to serve as the Plan Trustee until the effective date of the appointment of a successor Plan Trustee in accordance with section 3.7.1 of this Trust Agreement. Any removal of the Plan Trustee under this section shall be by order of the Bankruptcy Court, and shall also automatically constitute a removal of the Plan Trustee as the sole officer and manager of the Debtor.

**3.7    Appointment of Successor Plan Trustee.**

**3.7.1    Appointment of Successor Plan Trustee.**  In the event of a vacancy by reason of death or removal of the Plan Trustee, any interested person may file a pleading with the Bankruptcy Court seeking the appointment of a successor Plan Trustee, which shall be appointed by the Bankruptcy Court (after notice and a hearing) as soon as practicable, but in any event within sixty (60) days after the occurrence of the vacancy or, in the case of resignation, at least thirty (30) days before the effective date of the proposed resignation.

**3.7.2    Vesting of Rights in Successor Plan Trustee**.  Every successor Plan Trustee appointed under this Article shall execute, acknowledge, and deliver to the Trust, the Trust Committee, and the retiring Plan Trustee, if any, an instrument accepting the appointment subject to the terms and provisions of the Plan and this Trust Agreement. The successor Plan Trustee may,

in its sole discretion, provide a fidelity bond or surety as provided above in section 3.1. The successor Plan Trustee, without any further act, deed, or conveyance, shall become vested with all the rights, powers, trusts, and duties of the Plan Trustee, except that the successor Plan Trustee shall not be liable for the acts or omissions of any prior Plan Trustee.

**3.8** **Continuance of Trust.** The death, resignation, or removal of the Plan Trustee shall not operate to (i) terminate the Trust created by this Trust Agreement, (ii) revoke any existing agency (other than any agency of the Plan Trustee as the Plan Trustee) created under this Trust Agreement, or (iii) invalidate any action taken by the Plan Trustee. The Plan Trustee agrees that the provisions of this Trust Agreement shall be binding on, and inure to the benefit of, the Plan Trustee and its heirs, legal and personal representatives, successors or assigns, as the case may be. In the event of the resignation or removal of the Plan Trustee, the Plan Trustee shall promptly (i) execute and deliver by the effective date of resignation or removal, any documents, instruments, and other writings that may be reasonably requested by the successor Plan Trustee to effect the termination of the resigning or removed Plan Trustee's capacity under this Trust Agreement and the conveyance of the Trust Property then held by the resigning or removed Plan Trustee to the successor Plan Trustee; (ii) deliver to the successor Plan Trustee all documents, instruments, records, and other writings relating to the Trust that may be in the possession or under the control of the resigning or removed Plan Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Plan Trustee's obligations and functions by the successor Plan Trustee. The resigning or removed Plan Trustee hereby irrevocably appoints the successor Plan Trustee as its attorney-in-fact and agent with full power of substitution for it and its name, place, and stead to do any and all acts that such resigning or removed Plan Trustee is obligated to perform under this section 3.8. Such appointment shall not be affected by the subsequent disability or incompetence of the Plan Trustee making the appointment.

**3.9** **Compensation.** As compensation for services as Plan Trustee, the Plan Trustee shall receive reasonable compensation for all services rendered based upon time incurred and the ordinary hourly rates of the person providing services. The Plan Trustee shall also be entitled to reimbursement of all out-of-pocket expenses.

8

**3.10** **Standard of Care; Indemnification; Exculpation**. The Plan Trustee, acting in the capacity as the Plan Trustee or in any other capacity contemplated by this Trust Agreement or the Plan, shall not be personally liable in connection with the affairs of the Trust to the Trust or to any Person, except for such acts or omissions constituting fraud, willful misconduct, or gross negligence. The Plan Trustee shall not be personally liable to the Trust or to any Person for the acts or omissions of any officer, employee, or agent of the Trust, unless the Plan Trustee acted with gross negligence or willful misconduct in the section, retention, or supervision of such officer, employee, or agent of the Trust. Except in those situations in which the Plan Trustee is not exonerated of personal liability in accordance with the foregoing, the Plan Trustee (including each former Plan Trustee) shall be indemnified by the Trust against, and held harmless by the Trust from, any losses, claims, damages, liabilities, or expenses (including attorney fees, disbursements, and related expenses) to which the Plan Trustee may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Plan Trustee in its capacity as Plan Trustee, or in any other capacity contemplated by this Trust Agreement or the Plan or in connection with any matter arising out of or related to the Plan, this Trust Agreement, or the affairs of the Trust. If the Plan Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Trust Agreement, or the affairs of the Trust, the Trust shall periodically advance or otherwise reimburse on demand the Plan Trustee's reasonable legal and other expenses (including the Cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith, but the Plan Trustee shall be required to repay promptly to the Trust the amount of any such advanced or reimbursed expenses paid to the Plan Trustee to the extent that it shall be ultimately determined by Final Order that the Plan Trustee engaged in fraud, willful misconduct, or gross negligence in connection with the complained of actions. The Trust may indemnify and hold harmless the employees and agents of the Trust to the same extent as provided in this section 4.11 for the Plan Trustee. The provisions of this section shall remain available to, and be binding on, any former Plan Trustee or the estate of any deceased Plan Trustee.

**3.11** **Reliance by Plan Trustee**. The Plan Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion,

9

report, notice, request, consent, order, or other instrument or document that the Plan Trustee has no reason to believe is not genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Plan Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed in such documents; provided, however, the Plan Trustee shall be under a duty to examine, or caused to be examined, the above-referenced documents to determine whether those documents conform to the requirements of the Plan. The Plan Trustee may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection regarding any action taken or suffered by the Plan Trustee in accordance with such opinion. The Plan Trustee shall have the right at any time to seek instructions from the Bankruptcy Court (or any other court of competent jurisdiction after the chapter 11 case is finally closed) concerning the Trust Property, the Plan, or any other document executed in connection therewith, and those instructions shall be full and complete authorization regarding any action taken or suffered by the Plan Trustee in accordance with those instructions.

**3.12** **Reliance by Persons Dealing With the Trust**.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust shall be entitled to rely on the authority of the Plan Trustee to act in connection with the acquisition, management, or disposition of Trust Property, and shall have no obligation to inquire into the existence of such authority. On the sale by the Plan Trustee of any portion of the Trust Property, such Trust Property shall be delivered to the purchaser free and clear of any Liens or other encumbrances, claims, or interests of the Plan Trustee or the Beneficiaries, except as may otherwise be agreed to by the purchaser.

**3.13** **Statement of Discharge and Discharge of Plan Trustee**.

**3.13.1** **Statement of Discharge**.  The Plan Trustee shall, on termination of the Trust or on the Plan Trustee's resignation, removal, or death (in which case the Plan Trustee's estate shall), render a statement of discharge containing the following information: (i) all assets and funds of the Trust originally charged under the Plan Trustee's control; (ii) a summarized accounting, in sufficient detail, of all purchases, sales, gains, losses, and income in connection with the Trust during the Plan Trustee's term of service; and (iii) the ending balance of all assets and

10

funds of the Trust as of the date of discharge. At the discretion of the Plan Trustee, such statement may be audited by the independent accountants in accordance with generally accepted auditing standards.

**3.13.2 Approval of Statement of Discharge**. The statement of discharge required by section 3.13.1 shall be filed with the Bankruptcy Court. Unless a majority of the Beneficiaries object to the approval of the statement of discharge within 30 days after the date on which such statement of discharge was filed, the withdrawing Plan Trustee shall be discharged from all liability to the Trust, the Beneficiaries, and any Person who has had or may have an interest in the Trust or Trust Property for acts or omissions in the Plan Trustee's capacity as the Plan Trustee or in any other capacity contemplated by the Plan or this Trust Agreement.

**3.13.3 Costs Relating to Statement of Discharge**. The expenses of any accounting in connection with the statement of discharge shall be paid by the Trust as a Trust Cost.

## ARTICLE IV
## Powers of the Plan Trustee

**4.1 Title.** Legal title to all Trust Property shall be vested in the Plan Trustee, subject to the Plan Trustee's ability to cause legal title (or evidence of title) to any of the Trust Property to be held by any nominee or Person, on such terms, in such manner, and with such powers as the Plan Trustee may determine.

**4.2 Management Power**. Except as otherwise expressly limited in the Plan or this Trust Agreement, the Plan Trustee shall have control and authority over the Trust Property, including the Rights of Actions and other causes of action belonging to the Trust, and over the management and disposition of the Trust Property (including any transfer of Trust Property that does not constitute a disposition). Except as otherwise provided in the Plan or this Trust Agreement, the Plan Trustee need not obtain any Court order or approval in the exercise of any power or discretion conferred under this Trust Agreement, or account to any Court in the absence

11

of a breach of fiduciary duty. The Plan Trustee shall exercise its judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Property, giving due regard to the cost, risk, and delay of any course of action. In connection with the management and use of the Trust Property, the Plan Trustee's powers (except as otherwise expressly limited in the Plan) shall include the following:

(i)     to accept the Trust Property, pursue the liquidation and marshaling of the Trust Property, and preserve and protect the Trust Property;

(ii)     to reconcile, settle, or object to Claims against Primera and to investigate, prosecute, or settle, Causes of Action that are Trust Property against third parties;

(iii)     to make or cause to be made the initial cash distribution, and to make Distributions of Available Cash at least annually in accordance with the terms of the Plan and this Trust Agreement;

(iv)     with the prior approval of the Bankruptcy Court after notice and hearing, to liquidate and distribute Trust Property or any part thereof or any interest therein, and to dispose of the Trust Property for Cash or on such terms and for such consideration as the Plan Trustee deems proper;

(v)     to engage in all acts that would constitute ordinary performance of the obligations of a trustee under a liquidating trust and to file all returns of the Trust as a grantor trust for the Beneficiaries under Treasury Regulation sections 1.671-4(a) or (b);

(vi)     to enforce the payment of notes or other obligations of any Person or to make contracts with respect to such enforcement;

(vii)     to purchase insurance with such coverage and limits as it deems desirable consistent with the provisions of the Plan or this Trust Agreement, including insurance covering liabilities of the Plan Trustee or employees or agents of the Trust incurred in connection with their services to the Trust;

(viii)     to appoint, engage, employ, supervise, and compensate officers, employees, and other Persons as may be necessary or desirable, including managers, consultants, accountants, technical, financial, real estate, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories, and the Registrar;

(ix)     to the extent reasonable required to meet claims and contingent liabilities (including Disputed Claims) or to maintain the value of Trust Property during liquidation, to invest and

reinvest Cash available to the Trust, pending distribution, and to liquidate such investments; provided, however, during it existence, the Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount necessary to meet Claims and contingent liabilities (including reasonable amount necessary to meet Claims and contingent liabilities (including Disputed Claims) or to maintain the value of the Trust Property during liquidation;

(x)     to determine the manner of ascertainment of income and principal, and the apportionment of income and principal, and the apportionment between income and principal of all receipts and disbursements, and to select an annual accounting period;

(xi)    establish such funds, reserves, and accounts within the Trust estate, as deemed by the Plan Trustee in its discretion to be useful in carrying out the purposes of the Trust;

(xii)   to sue and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

(xiii)  delegate any or all of the discretionary power and authority conferred in this Trust Agreement at any time with respect to all or any portion of the Trust to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation;

(xiv)   undertake any duties or obligations and exercise any rights concerning the treatment of Secured Claims under the Plan;

(xv)    execute, deliver and perform such other agreements and documents and to take or cause to be taken any and all such other actions as it may deem necessary or desirable to effectuate and carry out the purposes of this Trust Agreement;

(xvi)   undertake any action or perform any obligation provided for or required by the Plan; and

(xvii)  undertake any action or perform any obligation required in order to wind up the business of Primera including the preparation and filing of any returns or reports required by any Governmental Unit, and the filing of articles of dissolution.

**4.3**     **Commingling of Trust Property**.  The Plan Trustee shall not commingle any of the Trust Property with its own property or the property of any other Person.

**4.4** **Employment and Compensation of Professionals**. The Plan Trustee shall have the authority to employ and compensate attorneys, accountants, investment advisors, and other professionals (including a Registrar and a disbursing agent to make Distributions) as the Plan Trustee may determine to be necessary or appropriate in carrying out the provisions of the Plan and this Trust Agreement. The Trust Property may pay the reasonable fees and expenses of such professionals as a Trust Cost without application to the Bankruptcy Court.

## ARTICLE V
## Obligations of the Plan Trustee

**5.1** **Records**. The Plan Trustee shall maintain records and account books relating to the Trust Property, the management of the Trust and the Trust Property, and all transactions undertaken by the Plan Trustee. The Plan Trustee shall also maintain records and account books relating to all Distributions contemplated and made under the Plan.

**5.2** **Investment Guidelines**. Cash held pending distribution, including Cash held in Reserves, shall, to the extent permitted by applicable law, be invested by the Plan Trustee in (i) direct obligations of, or obligations guaranteed or secured by, the United States of America (including United States Treasury Bills); (ii) obligations of any agency or corporation that is or may hereafter be created by or under an Act of the Congress of the United States of America as an agency or instrumentality thereof, or (iii) demand deposits or short-term certificates of deposit at any bank or trust company that has, at the time of the acquisition by the Plan Trustee of such investments, capital stock and surplus aggregating at least $100 million and whose short-term debt obligations are rated by at least two nationally recognized statistical rating organizations in one of the two highest categories therefore, but the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d) may be permitted to hold, pursuant to any amendment or addition to the Internal Revenue Code or to the Treasury Regulations, or any modification in IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise. Such investments shall

mature in such amounts and at such times as, in the judgment of the Plan Trustee at the times such investments are made, are necessary, or are desirable with a view to providing funds when needed to make payments from the Trust Property. Any investment purchased with the Trust Property shall be deemed a part of the Trust Property, and all interest, distributions, dividends, and proceeds received by the Plan Trustee on account of such investments shall be a part of the Trust Property.

**5.3** **Access to Information by Beneficiaries**. On reasonable request, each Beneficiary shall have reasonable access to the business records of the Trust during normal business hours for the purpose of obtaining information relating to the management of the Trust or Trust Property for any purpose reasonable related to the interests generally of the Beneficiaries; provided, however, that such access does not constitute an undue burden on the Plan Trustee and is not detrimental to the Trust. Nothing contained in this section is intended to restrict any Beneficiary from access to the business records of the Plan Trustee that the Plan Trustee discretionarily elects to provide.

**5.4** **United States Trustee Fees**. After the Closing Date and until the Bankruptcy Case is closed, the Plan Trustee shall pay as a Trust Cost all fees incurred under 28 U.S.C. section 1930(a)(6).

**5.5** **Rights of Action**.

    **5.5.1** **Investigation and Pursuit.** The Plan Trustee shall investigate, evaluate, and prosecute all Rights of Action, including but not limited to Causes of Action under chapter 5 of the Bankruptcy Code, against third parties; provided, however, the Plan Trustee may decide not to prosecute any Right of Action against a third party that the Plan Trustee reasonably believes would not be appreciably beneficial to the Trust.

    **5.5.2** **Compromise and Settlement**. The Plan Trustee may compromise and settle any Right of Action, without the necessity of Bankruptcy Court approval.

**5.6** **Dissolution of Primera Energy, LLC.** After the Closing Date, the Plan Trustee shall have all corporate power and authority with respect to the winding up of Primera's business

and the dissolution of the company. The Plan Trustee may, but shall not be obligated to, file articles of dissolution for Primera at any time.

## ARTICLE VI
### Beneficial Interests

**6.1** **Allocation of Beneficial Interests to Holders of Primera Claims**.
The Trust shall allocate, as of the Effective Date, to each holder of an unpaid Claim, a Beneficial Interest in the Trust equal to the ratio that the amount of the holder's Claim bears to the total amount of all such Claims. The allocation of Beneficial Interests shall be made as if all Disputed Claims were Allowed Claims as of the Effective Date.

**6.2** **Allocation of Beneficial Interests to Holders of Primera Equity Interests**. On the satisfaction of all required payments to Claims in accordance with section 7.2.3 of this Trust Agreement, all Beneficial Interests previously allocated to holders of Claims shall be canceled, and reallocated to holders of Equity Interests, by allocating to each holder of Equity Interest, a Beneficial Interest in the Trust Equal to the ratio that the amount of the holders' Equity Interest bears to the total amount of all Equity Interests.

**6.4** **Register Entries Regarding Beneficial Interests**. The Plan Trustee or the Registrar shall made appropriate notations in the Trust Register and calculate the following ratios before each Distribution:

        (i)     the Beneficial Interests and Claim or Interest held by each Beneficiary; and

        (ii)    as to each Beneficiary, the Ratable Proportion.

**6.5** **Allocation of Beneficial Interests to Holders of Disputed Claims**. The allocation of any Beneficial Interest on account of a Disputed Claim pursuant to Article VII of this Trust Agreement, shall be reserved on the Trust Register maintained by the Registrar and shall become a Reserved Beneficial Interest. Any Claim filed, in whole or in part, in an unknown or undetermined amount may be estimated by the Plan Trustee, subject to approval by the Bankruptcy Court, and

such Claim as estimated shall be deemed a Disputed Claim until otherwise allowed. To the extent all or a portion of a Disputed Claim is ultimately disallowed, the Trust shall reallocate among the remaining Beneficial Interests, the Reserved Beneficial Interest relating to the portion of the Disputed Claim that was disallowed. To the extent all or a portion of a Disputed Claim ultimately becomes an Allowed Claim, the Reserved Beneficial Interest relating to the portion of the Disputed Claim that was allowed, shall be removed from the Reserve.

**6.6** **Representation of Beneficial Interest.** The Beneficial Interests shall be uncertificated. The Beneficial Interests shall be represented by appropriate book entries in the Trust Register.

**6.7** **Absolute Owners.** The Plan Trustee may deem and treat the Beneficiary of record (as determined pursuant to Article VII of this Trust Agreement) as the absolute owner of such Beneficial Interests for the purpose of receiving Distributions and for all other purposes whatsoever.

**6.8** **Non-transferable.** Beneficial Interests are not transferable except upon the death of the Beneficiary or by operation of law.

# ARTICLE VII
## Administration of the Trust Estate

**7.1** **Establishment of Reserves and Payment of Creditor Claims**.

**7.1.1** **Reserve for and Payment of Administrative Expenses.** Before making any Distributions and within forty-five (45) days after Effective Date, the Plan Trustee shall fund the Administrative Expense Reserve with any Available Cash in an amount sufficient to pay the claimed amount of all Administrative Claims, including Professional Fee Claims. Administrative Claims shall be paid from the Administrative Expense Reserve as allowed by Order of the Bankruptcy Court. Professional Fee Claims shall be paid from retainers or from the Administrative Expense Reserve as allowed by Order of the Bankruptcy Court. To the extent any funds held in the

17

Administrative Expense Reserve relate to Administrative Claims or Professional Fee Claims that have either been disallowed by the Bankruptcy Court, or are no longer claimed as evidenced by a written release of such Claim or the failure to seek allowance of such Claim within six (6) months from the Effective Date, then such funds shall be distributed on the next Distribution Date to holders of Beneficial Interests as if the funds were Available Cash. The Administrative Expense Reserve shall be dissolved once all required payments have been made.

**7.1.2 Reserve for and Payment of Priority Claims.** Before making any Distributions and within forty-five (45) days after the Effective Date, the Plan Trustee shall establish a Priority Claim Reserve funded with any Available Cash in an amount necessary to pay the claimed and/or scheduled amount of all Priority Claims, including any applicable interest accruing from the Effective Date to the Allowance Date. Allowed Priority Claims shall be fully and completely satisfied by the payment of Cash from the Priority Unsecured Claim Reserve in an amount equal to the a Priority Claim on the later of the Allowance Date or Distribution Date. To the extent any funds held in the Priority Claim Reserve relate to a Priority Claim that has either been disallowed by the Bankruptcy Court or is no longer claimed as evidenced by a written release of such Claim, or the failure to seek allowance of such Claim within six (6) months from the Effective Date, then those funds shall be distributed on the next Distribution Date to holders of Beneficial Interests as if the funds were Available Cash. The Priority Claim Reserve shall be dissolved once all required payments have been made.

**7.1.3 Operating Reserve.** The Plan Trustee shall establish the Operating Reserve funded periodically with Available Cash in an amount determined by the Plan Trustee, in consultation with the Trust Committee, to be reasonably necessary to pay anticipated Trust Costs, fund litigation, fund contingent liabilities, and otherwise conduct the affairs of the Trust.

**7.1.4 Disputed Claims Reserve for Beneficiaries.** Before any Distributions and within forty-five (45) days after the Effective Date, the Plan Trustee shall establish a Disputed Claims Reserve (which shall be a segregated, interest-bearing account) funded periodically with Available Cash in an amount sufficient to pay (i) all Allowed Claims and Allowed Equity Interests

whose Distributions are unclaimed and (ii) all Disputed Claims and Disputed Equity Interests pending a determination of their entitlement to Distributions under the Plan. When a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, the Plan Trustee shall release and distribute the funds reserved for the particular Disputed Claim or Disputed Interest (net of distribution cost) from the Disputed Claim Reserve, together with any earned interest attributable to the Disputed Claim or Disputed Interest. If the Bankruptcy Court disallows the Disputed Claim or Disputed Interest, the funds and interest and proceed thereon attributable to the Disputed Claim or Disputed Interest shall be part of the Available Cash or Trust Property free and clear of any Liens, claims, interest, or other encumbrances, and shall be distributed in accordance with the Plan and this Trust Agreement.

**7.2** **Distributions to Holders of Beneficial Interests.**

**7.2.1** **Distributions Generally.** The Plan Trustee shall only make Distributions from available cash and not from Trust Property, except as otherwise provided in the Plan or this Trust Agreement. Beginning on the Effective Date, interest shall accrue on the unpaid balance of a Beneficiary's Allowed Unsecured Claim at 5% per annum. Interest shall accrue on Subordinated Claims at 5% per annum. Distributions of available cash received by a Beneficiary shall be applied first to pay the principal amount of the Allowed Claim and then to accrued and unpaid interest. Subject to the establishing the Reserves described above and any other limitations contained in this Trust Agreement, the Plan Trustee shall make an initial distribution from available cash on the Effective Date of the Plan and thereafter shall have authority to make Distributions of available cash at such times the Plan Trustee believes there is sufficient available cash to warrant a Distribution. The Trust shall not, in any event, retain Trust Cash in excess of what is reasonably necessary to fund the Reserves.

**7.2.2** **Distributions to Beneficiaries Who are Holders of Unsecured Claims.** A Beneficiary who is the holder of a Unsecured Claim shall receive on a Distribution Date its share of Available Cash based on the Beneficiary's Ratable Proportion until the Beneficiary's Allowed Unsecured Claim is paid in full with interest.

**7.2.4** **Distributions to Beneficiaries Who Are Holders of Equity Interests**. On the prior satisfaction in full of all Beneficiaries pursuant to section 7.2.3, a Beneficiary who is the holder of an Equity Interest shall receive on a Distribution Date its share of Available Cash based upon the Beneficiary's Ratable Proportion.

**7.2.5** **Distributions to Holders of Reserved Beneficial Interests.** No Distributions shall be made to holders of a Reserved Beneficial Interest. To the extent a Reserved Beneficial Interest is removed from the Reserve on the Trust Register in accordance with section 7.5 and becomes a Beneficial Interest, any Cash in the Disputed Claims Reserve relating to that Beneficial Interest shall become Available Cash and shall be released and distributed to such Beneficiary on the next Distribution Date. To the extent a Reserved Beneficial Interest is reallocated among the remaining Beneficial Interest in accordance with section 6.5, any Cash in the Disputed Claim Reserve relating to that Reserved Beneficial Interest shall become Available Cash and shall be released and distributed on the next Distribution Date to the holders of the remaining Beneficial Interests.

**7.3** **Place and Manner of Payments or Distributions**. The Plan Trustee shall make Distributions to the Beneficiaries of record as of the Record Date by mailing the Distribution to the Beneficiary at the Beneficiary's address as listed in the Schedules of Assets and Liabilities, or any proof of claim filed by the Beneficiary, or as listed in Trust Register, or at such other address as the Beneficiary shall have specified for payment purposes in a written notice to the Plan Trustee and/or the Registrar at least 20 days before the applicable Record Date. The Plan Trustee may distribute any Cash by wire, check, or such other method as the Plan Trustee deems appropriate under the circumstances. Before receiving any Distributions, all Beneficiaries, at the Plan Trustee's request, must provide to the Plan Trustee written notification of their respective Federal Tax Identification Numbers or Social Security Numbers; otherwise, Plan Trustee may suspend Distributions to any Beneficiary who has not provided its Federal Tax Identification Number or Social Security Number. If a Beneficiary does not provide the Plan Trustee with its Federal Tax Identification Number or Social Security Number, as applicable, within six (6) months after written request is

20

made (such written request being adequate if mailed by first class mail or any other manner deemed appropriate by the Plan Trustee), such Beneficiary waives its right to any Distribution under the Plan.

**7.4     Minimum Distributions**.  To the extent a Distribution to a particular Beneficiary is less than $100.00, the Plan Trustee may hold the Distribution until the final Distribution or until the aggregate of Distributions to the Beneficiary exceeds $100.00.

**7.5     Unclaimed or Undelivered Distributions.**

**7.5.1   Undeliverable Distributions.**  If a Distribution to any Beneficiary is returned as undeliverable, the Plan Trustee shall use reasonable efforts to determine the Beneficiary's then current address, and no further Distributions shall be made to the Beneficiary unless and until the Plan Trustee is notified of the Beneficiary's then current address.  If the Plan Trustee is not notified in writing by the Beneficiary of such address change, such Beneficiary waives its right to any Distributions under the Plan.

**7.5.2   Treatment of Unclaimed or Undeliverable Distributions.**  If any Person entitled to Distributions of Available Cash or Trust Property under the Plan cannot be located on the Effective Date or any time thereafter, then, subject to the provisions of this section, such Available Cash or Trust Property shall be set aside, and, in the case of Available Cash, held in an interest-bearing account or fund maintained by the Plan Trustee on behalf of the Person.  If the Person is located within nine (9) months after Effective Date, the Available Cash, together with any interest actually earned thereon and proceeds thereof (less the allocable portion of taxes paid by the Debtor on account of the Person), shall be paid or distributed to such Person.  If the Person cannot be located within nine (9) months after the Effective Date, then (i) the Person shall no longer be deemed to be a Beneficiary , and (ii) any Available Cash and Trust Property and interest and proceeds thereon allocable to the Person (net of the allocable portion of taxes paid by the Debtor) shall be part of the Available Cash or Trust Property free and clear of any Claim to such property by or on behalf of the Person (who shall be deemed to have released such Claim), and shall be otherwise distributed as provided in the Plan, with such adjustments as are required to take into

account that such Person is no longer a Beneficiary.

### 7.6    Tax Matters.

**7.6.1    Certain Income Tax Matters.**    The general purpose of the Trust established under this Trust Agreement is to provide a mechanism for the liquidation of the Trust Property, and to distribute the proceeds of the liquidation, net of all Claims, expenses, charges, liabilities, and obligations of the Trust, to the holders of Beneficial Interests and certain Allowed Claims and Equity Interests in accordance with the terms of the Plan. The Trust will not conduct or engage in any trade or business activities, other than those associated with or related to the liquidation of the Trust Property and the Distributions to the Beneficiaries. It is intended that the Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d). All parties to this Trust Agreement shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including sections 61(12), 483, 1001, 1012, and 1274). All parties to this Trust Agreement shall treat the transfers in trust as if all the transferred assets, including all the Trust Property, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Trust and the owners of the Trust. The Plan Trustee shall file returns for the Trust as a grantor trust under Treasury Regulations section 1.671-4(a) or (b). The parties hereto, including the Plan Trustee and the Beneficiaries shall value the property transferred to the Trust consistently and such valuations shall be used for all federal income tax purposes. The Beneficiaries (except to the extent a Beneficiary is the Internal Revenue Service) shall be responsible for payment of any taxes due with respect to the operations of the Trust. During its existence, the Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount necessary to meet Claims and contingent liabilities (including Disputed Claims) or to maintain the value of its assets during liquidation. The Plan Trustee shall use its continuing best efforts to dispose of the Trust Property, make timely Distributions, and shall not unduly prolong the duration of the Trust. The Plan Trustee is authorized to take any action as may be necessary or appropriate to minimize any potential tax liability of the Trust and, thereafter, the Beneficiaries arising out of the operations of the Trust. The Plan Trustee is directed to allocate all costs, charges,

22

expenses, and deductions, in whole or in part, to income or principal at such time and in such a manner as the Plan Trustee shall determine will reduce or eliminate the Trust's taxes, if any. The Plan Trustee shall file in a timely manner all tax returns that are required by applicable law by virtue of the existence and operations of the Trust. The Trust shall distribute, at least annually, all Trust income and gain, Cash (whether or not allocable to income or principal, including all capital gains allocable to principal), any other Trust Property the Plan Trustee in its discretion determines is properly distributable (whether out of income or principal), and liquidation proceeds to the Beneficiaries, after payment of expenses and liabilities, less the Reserves and reasonable necessary Reserves for expenses and other Trust Costs. Additionally, the Plan Trustee shall, at least annually, provide to Beneficiaries such information that is appropriate or necessary to enable the Beneficiaries to determine their respective tax obligations, if any, arising out of the operations of the Trust. The Beneficiaries (except to the extent the IRS is a Beneficiary) shall each report their share of the net income of the Trust as reported to them by the Plan Trustee and pay any tax owing thereon on a current basis. All income of the Trust, including amounts retained in a Disputed Claims Reserve, will be taxed either to the Beneficiaries (except to the extent the IRS is a Beneficiary) or to the Trust (in the case of amounts allocated to a Disputed Claims Reserve) each taxable year. No Beneficiary shall have any claim to or with respect to any specific property held in trust and shall have no claim to or for a distribution of property in kind.

  **7.6.2 Treatment of Trust Property for Tax Purposes.** The aggregate value of the Trust Property shall be determined by the Plan Trustee shortly after the Effective Date and reported to the Beneficiaries and the Trust Committee. The value of the Trust Property shall be consistently reported for federal income tax purposes.

  **7.6.3 Withholding.** The Plan Trustee may withhold from the amount distributable at any time to any Person (except with respect to the IRS) such amounts sufficient to pay any tax or other charge that have been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States of America or of any state or political subdivision or entity by reason of any Distribution provided for under the Plan or this Trust Agreement, whenever such withholding is determined by the Plan Trustee in its

discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Plan Trustee, in the exercise of its discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section. Notwithstanding the foregoing but without prejudice to the Plan Trustee's rights, such Person shall have the right with respect to the United States of America, or any state, or any political subdivision or either, to contest the imposition of any tax or other charge by reason of any Distribution under the Plan.

**7.6.4  Tax Reporting**. To the extent that any Beneficiary may be able to use the installment method of reporting income with respect to a Distribution, the Plan Trustee will annually compile and disseminate to Beneficiaries who request such information all available tax return information with respect to interest (stated or unstated) and otherwise necessary or useful in reporting under the installment method.

**7.6.5  Interest.** In the Plan Trustee's discretion, interest received with respect to principal distributed pursuant to this Trust Agreement shall be distributed along with the underlying principal.

**7.6.6  Allocation of Income and Losses**. Unless otherwise determined by the Plan Trustee in its reasonable discretion, allocations between Beneficiaries of taxable income of the Trust for each of its tax years shall be determined by reference to the manner in which an amount of Cash equal to the amount of such taxable income would be distributed (without regard to any restrictions on Distributions described in the Plan) if, immediately before such deemed Distribution, the Trust had distributed all its other assets (valued for this purpose at their tax book value) on account of the Beneficial Interests (treating the Disputed Claim Reserve for this purpose as Beneficiaries entitled to Distributions), taking into account all prior and concurrent Distributions from the Trust made in accordance with the Plan. Similarly, taxable loss generally will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Trust Property. The tax book value of assets means their fair-market value on the Effective Date or, if later, the date on which such assets were acquired by

the Trust, adjusted in either case in accordance with applicable tax accounting principles. Taxes payable on account of taxable income of the Trust allocated to the Disputed Claim Reserve shall be paid as a Trust Cost. With regard to transfers of Beneficial Interests, the Plan Trustee shall promptly establish a standard convention for allocating and apportioning taxable income and loss between a transferor and its transferee and shall not be required to so allocate and apportion based on the actual Trust activities before and after the date of any transfer. The Plan Trustee shall notify the Beneficiaries of the convention adopted promptly after such adoption. The Plan Trustee shall use it sole discretion to establish a fair and equitable convention to apply and may, but is not required to, adopt a monthly, quarterly, or similar record date convention.

## ARTICLE VIII
### Termination

The Trust shall terminate on the earlier of (i) the date that is five (5) years after the date this Trust is created or (ii) the distribution of all Available Cash and Trust Property. Notwithstanding the foregoing, with Bankruptcy Court approval, the Plan Trustee may extend the term of the Trust for one or more finite terms based on the particular facts and circumstances at that time, if it is in the best interest of the Beneficiaries and an extension is necessary to the liquidating purpose of the Trust. If permitted under the applicable law and not contrary to the classification of the Trust as a liquidating trust and a pass-through entity under applicable income tax law, and if in the best interests of the Beneficiaries, the Plan Trustee may distribute interests in the Trust Property or distribute the Trust Property to another Person and then distribute interests in such Person to the Beneficiaries. Trust Property to be distributed in kind shall be valued by the Plan Trustee in its reasonable discretion at their tax book value. The Trust may not be terminated at any time by the Beneficiaries.

## ARTICLE IX
### Plan Administration Committee

(a)     **Establishment.** A committee (the "Plan Administration Committee" or "PAC") is hereby established consisting of no more than three (3) creditors from the existing Committee of

Unsecured Creditors, to consult with the Plan Trustee regarding the Creditor Trust Assets. The PAC shall only exist so long as there are at least two (2) creditors willing to serve. No compensation to the members of the PAC shall be paid by the Plan Trustee from the Creditor Trust Assets; provided, however, that reasonable expenses of the PAC and PAC Members will be reimbursed by the Plan Trustee from the Creditor Trust Assets. The PAC shall have standing as a party in interest to enforce the terms and provisions of this Agreement and the Plan. The PAC shall have the authority to retain counsel if necessary to resolve a dispute with the Plan Trustee and the reasonable fees and expenses of such counsel shall be a cost of administration of the Creditors Trust. The PAC Members shall not be liable for any act done or omitted to be done as a member of the PAC while acting in good faith and the Creditors Trust shall indemnify and hold harmless each PAC Member, and their respective agents, representatives, professionals, and employees, from and against and in respect of any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditor Trust; provided, however, that no such indemnification will be made to such Persons for actions or omissions that constitute willful misconduct, negligence or fraud.

(b)     **Governance of Plan Administration Committee.**

(1) A simple majority of the then current PAC Members must be present to constitute a quorum to conduct PAC business. No PAC business may be conducted absent a quorum. A PAC Member may vote by written proxy, and such proxy shall be counted for the purpose of establishing a quorum. The proxy shall specify the particular issue or issues to which it pertains or may be general in nature. Each PAC Member shall have one (1) vote. Except as otherwise provided

herein, every act or decision done or made by a majority of the PAC Members at a duly held meeting at which a quorum is present shall constitute the act of the PAC. PAC Members shall not participate in and shall abstain from any vote with respect to any claim objection, litigation or other matter involving such PAC Member. In the event that any voting PAC Member abstains from voting, the requirement of a majority for PAC action shall be reduced by one (1) vote for each PAC Member who abstains from voting. The Chairperson shall tally and record the votes of the PAC Members. In the event of a voting tie, ties shall be broken by the Chairperson.

(2) Action may be taken without a meeting if the Chairperson determines that an emergency exists justifying such action without a meeting and if a majority of the voting PAC members consent to such action and execute a written consent. Notice of any actions so taken shall be sent to the other PAC Members. Meetings may be held in person, telephonically or electronically, as determined by the PAC. The PAC shall elect a chairperson ("Chairperson") who shall be charged with responsibility of scheduling, presiding over, arranging for minutes to be kept, and overseeing administration of all PAC matters. The PAC shall meet at such times, in such location, and with such frequency as the PAC shall determine, but no more often than quarterly unless the PAC needs to approve a specific transaction.

(3) Special meetings may be called by the Chairperson on at least thirty-six (36) hours advance notice by telephone or electronic mail to each PAC Member, provided that in an emergency the Chairperson may call a meeting on less than twenty-four (24) hours notice. If such notice is by telephone, it shall, if practical be confirmed by electronic mail, or similar written medium. The primary purpose for the special meeting shall be set forth in the notice. The Chairperson shall call special meetings whenever it deems it appropriate or whenever requested to do so by a simple

majority of the PAC Members.

# ARTICLE X

## Miscellaneous

**10.1**   **Notices.**   All notices, reports, or other communications required or permitted to be made under this Trust Agreement shall be in writing and shall be delivered by United States Mail, postage prepaid, to:

>   If to the Plan Trustee:

Notice mailed shall be effective on the date mailed.   All other notices shall be effective on the date of delivery.  Any Person may change the address for purposes of notices under this Trust Agreement by furnishing written notice to all other Persons identified above in this Article.

**10.2**   **Amendment.**   This Trust Agreement may be amended by the proposal and approval by the Plan Trustee of such amendment, and  (i) the consent of the Beneficiaries holding a majority of the Beneficial Interests (excluding Reserved Beneficial Interests), or (ii) pursuant to an order entered by the Bankruptcy Court.  This Trust Agreement may be amended by the Plan Trustee without the approval of the Beneficiaries to correct typographical errors or if such amendment is not material, and in either case if such amendment does not adversely affect the interests of any Beneficiary, but such amendment shall not be effective until fifteen (15) days after the Beneficiaries shall have been given notice of such amendment.

**10.3    Counterparts**.  This Trust Agreement may be executed in one or more Counterparts, all of which shall taken together to constitute one and the same instrument.

**10.4    Governing Law; Severability**.  This Trust Agreement shall be governed by, construed under, and interpreted in accordance with the laws of the State of Texas.  If it shall be determined by a Court of competent jurisdiction that any provision of this Trust Agreement shall be invalid or unenforceable under applicable law, such invalidity or unenforceability shall not invalidate the entire Trust Agreement.   In that case, this Trust Agreement shall be construed so as to limit any impermissible term or provision so as to make it enforceable or valid within the requirements of applicable law, and, if such term or provision cannot be so limited, this Trust Agreement shall be construed to omit such invalid or unenforceable provisions provided that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

**10.5    Headings.**  Sections, subheadings and other headings used in this Trust Agreement are for convenience only and shall not affect the construction or interpretation of this Trust Agreement.

**10.6    Relationship to Plan.**  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan, and therefore this Trust Agreement is incorporated into the Plan.  To that end, the Plan Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and shall be bound by the terms of the Plan.  If any provision of this Trust Agreement is found to be inconsistent with the provisions of the Plan, the provisions of this Trust Agreement shall control.

**10.7    Consent to Jurisdiction.**  Each of the parties to this Trust Agreement (and each

Beneficiary by its acceptance of the benefits of the Trust created under the Trust Agreement) (i) consents and submits to the jurisdiction of the Bankruptcy Court for all purposes of this Trust Agreement, including any action or proceeding instituted for the enforcement of any right, remedy, obligation, or liability arising under or by reason of the Trust Agreement, and (ii) consents and submits to the venue of such action or proceeding in the City of Fort Worth, Texas (or such Judicial District of a Court of the United States as shall include the same).

    **10.8**   <u>**Waiver of Jury Trial.**</u>   ANY AND ALL RIGHT TO TRIAL BY JURY IS HEREBY WAIVED, AND THERE SHALL BE NO RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS TRUST AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS TRUST AGREEMENT.

    **10.9**   <u>**Voting by Beneficiaries.**</u>   Any consent, approval, or vote of a majority of the

Beneficial Interests required under this Trust Agreement shall be obtained where the number of such consents approvals, or votes received, constitutes in excess of fifty (50) percent of the votes actually cast on account of such Beneficial Interests (excluding Reserved Beneficial Interests).

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, duly authorized as of the day and year first above written.

Primera Energy, LLC

By:_____

     Chapter 11 Trustee

_____

Plan Trustee

**MOR-1**

# UNITED STATES BANKRUPTCY COURT

CASE NAME: Primera Energy, LLC  
CASE NUMBER: 15-51396-cag-11  
PROPOSED PLAN DATE:

PETITION DATE: 06/03/15  
DISTRICT OF TEXAS: Western  
DIVISION: San Antonio

## MONTHLY OPERATING REPORT SUMMARY FOR MONTH

| | MONTH | | | | YEAR | | 2015 |
|---|---|---|---|---|---|---|---|
| | 6/3 - 6/30 | 7/1 - 7/31 | 8/1 - 8/31 | 9/1 - 9/30 | 10/1 - 10/31 | 11/1 - 11/30 | 11/1 - 11/30 |
| REVENUES (MOR-6) | 18.11 | 73,022.56 | 28,152.83 | 224,287.68 | 218,183.33 | | 74,011.05 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | 0.00 | 0.00 | -15,958.30 | 114,282.63 | 120,776.33 | | 4,810.39 |
| NET INCOME (LOSS) (MOR-6) | -65,469.04 | 57,810.37 | -16,283.30 | 86,855.93 | 115,002.66 | | -16,448.42 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |
| TOTAL DISBURSEMENTS (MOR-8) | 65,487.15 | 15,212.19 | 44,436.13 | 137,431.75 | 103,180.67 | | 90,459.47 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| | CHECK ONE | |
|---|---|---|
| | Yes | No |
| Are all accounts receivable being collected within terms? | ☑ Yes | ☐ No |
| Are all post-petition liabilities, including taxes, being paid within terms? | ☑ Yes | ☐ No |
| Have all tax returns and other required government filings been timely paid? | ☑ Yes | ☐ No |
| Have any pre-petition liabilities been paid? | ☐ Yes | ☑ No |
| If so, describe | | |
| Are all funds received being deposited into Debtor in Possession bank accounts? | ☑ Yes | ☐ No |
| Were any assets disposed of outside the normal course of business? | ☐ Yes | ☑ No |
| If so, describe | | |
| Are all U.S. Trustee Quarterly Fee Payments current?  Sale of real property – Order dated 10-5-15, Dkt. #197 | ☑ Yes | ☐ No |
| What is the status of your Plan of Reorganization? | | |

**REQUIRED INSURANCE MAINTAINED**  
**AS OF SIGNATURE DATE**  EXP. DATE

| | Yes | No | |
|---|---|---|---|
| CASUALTY | ☐ Yes | ☑ No | |
| LIABILITY | ☐ Yes | ☑ No | |
| VEHICLE | ☐ Yes | ☑ No | |
| WORKERS | ☐ Yes | ☑ No | |
| OTHER | ☑ Yes | ☐ No | 00/00/2016 |

ATTORNEY NAME: Jason Searcy, Ch. 11 Trustee  
FIRM NAME: Searcy & Searcy  
ADDRESS: P.O. Box 3929  
CITY, STATE, ZIP: Longview, TX 75606  
TELEPHONE/FAX: 903-757-3399 / 903-757-8559  
jsearcy@jrsearcylaw.com

MOR-1

INITIALS _____  
DATE _____  
UST USE ONLY

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED X _____  TITLE: Trustee  
(ORIGINAL SIGNATURE)

_____  DATE  Revised 11/08/05  
(PRINT NAME OF SIGNATORY)

**Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements. Trustee can not represent the validity or reliability of any amounts for June and July 2015 reflected on this Balance Sheet. Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015.**



EXHIBIT

B

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11
Schedules filed 6-26-15
Chapter 11 Trustee appointed 7-13-15

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* 6/3/15 | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 |
|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | |
| Cash /Financial Accounts | 449,538.74 | 389,648.65 | 460,959.02 | 444,675.72 | 531,531.65 | 646,534.31 | 630,085.89 |
| Accounts Receivable, Net | 1,421,390.98 | 1,421,390.98 | 1,421,390.98 | 1,421,390.98 | 1,421,390.98 | 1,421,390.98 | 1,421,390.98 |
| Inventory; Lower of Cost or Market | 8,920,589.21 | 8,920,589.21 | 8,920,589.21 | 8,920,589.21 | 8,920,589.21 | 8,920,598.21 | 8,920,598.21 |
| Prepaid Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Investments – Interests in Ventures | 623,700.00 | 623,700.00 | 623,700.00 | 623,700.00 | 623,700.00 | 623,700.00 | 623,700.00 |
| Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL CURRENT ASSETS | Unknown | 11,355,328.84 | 11,426,639.21 | 11,410,355.91 | 11,497,211.84 | 11,612,223.50 | 11,595,775.08 |
| PROPERTY, PLANT & EQUIP. @ COST | 2,795,530.00 | 2,795,530.00 | 2,795,530.00 | 2,795,530.00 | 2,795,530.00 | 2,795,530.00 | 1,545,530.00 |
| Less Accumulated Depreciation | Unknown | Unknown | Unknown | Unknown | Unknown | | |
| NET BOOK VALUE OF PP & E | Unknown | Unknown | Unknown | Unknown | Unknown | 2,795,530.00 | 1,545,530.00 |
| **OTHER ASSETS** | | | | | | | |
| 1. Tax Deposits | Unknown | Unknown | Unknown | 0.00 | 0.00 | 0.00 | 0.00 |
| 2. Investments in Subsidiaries | Unknown | Unknown | Unknown | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. Electric Deposit – CPS Energy Utility** | 1,480.00 | 1,480.00 | 1,480.00 | 1,480.00 | 1,480.00 | 126.72 | 0.00 |
| 4. | | | | | | | |
| TOTAL ASSETS | $14,212,228.93 | $14,152,338.84 | $14,223,649.21 | $14,207,365.91 | $14,294,221.84 | $14,407,880.22 | $13,141,305.08 |

* Per Schedules and Statement of Affairs

MOR-2

Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements. Trustee can not represent the validity or reliability of any amounts reflected on this Balance Sheet for June and July 2015. Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015

**CPS Energy Utility Electric Deposit balance in the amount of $126.72 refunded on 10/30/15
Real property located at 21022 Gathering Oaks sold per Order dated 10-5-15, Dkt. #197

Revised 11/08/05

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* 6/3/15 | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 |
|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | Unknown | Unknown | Unknown | 27,742.52 | 24,067.18 |
| **PRE-PETITION LIABILITIES** | | | | | | | |
| Notes Payable - Secured | 975,082.31 | 975,082.31 | 975,082.31 | 975,082.31 | 975,082.31 | 0.00 | 0.00 |
| Priority Debt | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Federal Income Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| FICA/Withholding | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unsecured Debt | 6,226,930.80 | 6,226,930.80 | 6,226,930.80 | 6,226,930.80 | 6,226,930.80 | 6,226,930.80 | 6,226,903.80 |
| Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL PRE-PETITION LIABILITIES | 7,202,013.11 | 7,202,013.11 | 7,202,013.11 | 7,202,013.11 | 7,202,013.11 | 6,226,930.80 | 6,226,903.80 |
| **TOTAL LIABILITIES** | Unknown | Unknown | Unknown | Unknown | Unknown | 6,254,673.32 | 6,250,970.98 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | |
| PREFERRED STOCK | | | | | | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | |
| RETAINED EARNINGS: Filing Date | | | | | | | |
| RETAINED EARNINGS: Post Filing Date | | | | | | | |
| TOTAL OWNER'S EQUITY (NET WORTH) | Unknown | Unknown | Unknown | Unknown | Unknown | 0.00 | 0.00 |
| **TOTAL LIABILITIES & OWNERS EQUITY** | Unknown | Unknown | Unknown | Unknown | Unknown | $0.00 | $0.00 |

* Per Schedules and Statement of Affairs

MOR-3

Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements.
Trustee can not represent the validity or reliability of any amounts reflected on this Balance Sheet for June and July 2015.
Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015.

**Note:** Secured creditor, Karnes County National Bank, paid per sale of real property, Order dated 10-5-15, Dkt. #197

Revised 11/08/05

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 |
|---|---|---|---|---|---|---|
| **_TRADE ACCOUNTS PAYABLE_** | | | | | | |
| **TAX PAYABLE** | | | | | | |
| Federal Payroll Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| State Payroll Taxes | | | | | 0.00 | 0.00 |
| Ad Valorem Taxes | | | | | 0.00 | 0.00 |
| Other Taxes | | | | | 4,242.52 | 567.18 |
| TOTAL TAXES PAYABLE | | | | | 4,242.52 | 567.18 |
| SECURED DEBT POST-PETITION | 975,082.31 | 975,082.31 | 975,082.31 | 975,082.31 | 0.00 | 0.00 |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **OTHER ACCRUED LIABILITIES** | | | | | | |
| 1. Loan from Alfaro Energy, LLC (5-12-15) (7-9-15) | 10,000.00 | 13,500.00 | 23,500.00 | 23,500.00 | 23,500.00 | 23,500.00 |
| 2. | | | | | | |
| 3. | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | Unknown | Unknown | Unknown | Unknown | $27,742.52 | $24,067.18 |

MOR-4
*Payment requires Court Approval

Note: Secured creditor, Karnes County National Bank, paid per sale of real property, Order dated 10-5-15, Dkt. #197

Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements.

Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015

Revised 11/08/05

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

## AGING OF POST-PETITION LIABILITIES
### MONTH _____ 11/1-11/30/15

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | MONTH |
|---|---|---|---|---|---|---|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL Unknown | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |

## AGING OF ACCOUNTS RECEIVABLE

| MONTH | | | | | |
|---|---|---|---|---|---|
| 0-30 DAYS | | | | | |
| 31-60 DAYS | | | | | |
| 61-90 DAYS | | | | | |
| 91+ DAYS | | | | | |
| TOTAL Unknown | $0.00 | | | $0.00 | |

MOR-5

*Revised 11/08/05*

**Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements.**

Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

## STATEMENT OF INCOME (LOSS)

| | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | 18.11 | 73,022.56 | 28,152.83 | 224,287.68 | 218,183.33 | 74,011.05 | 617,675.56 |
| TOTAL COST OF REVENUES | | | | | | | 0.00 |
| GROSS PROFIT | 18.11 | 73,022.56 | 28,152.83 | 224,287.68 | 218,183.33 | 74,011.05 | 617,675.56 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| General & Administrative | 18,654.55 | 1,035.00 | 44,111.13 | 110,005.05 | 97,407.00 | 69,200.66 | 340,413.39 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 |
| Other - Payroll | 26,516.42 | 11,824.61 | 0.00 | 0.00 | 0.00 | 0.00 | 38,341.03 |
| Other - Payroll 941 Taxes | 5,316.18 | 2,352.58 | 0.00 | 0.00 | 0.00 | 0.00 | 7,668.76 |
| TOTAL OPERATING EXPENSES | 65,487.15 | 15,212.19 | 44,111.13 | 110,005.05 | 97,407.00 | 69,200.66 | 401,423.18 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | 0.00 | 0.00 | -15,958.30 | 114,282.63 | 120,776.33 | 4,810.39 | 216,252.38 |
| INTEREST EXPENSE | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 |
| DEPRECIATION | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 |
| OTHER (INCOME) EXPENSE* | 0.00 | 0.00 | 0.00 | 27,426.70 | 230.33 | 20,042.47 | 47,699.50 |
| OTHER ITEMS** - UST fee | 0.00 | 0.00 | 325.00 | 0.00 | 1,300.82 | 649.18 | 2,275.00 |
| TOTAL INT, DEPR. & OTHER ITEMS | 0.00 | 0.00 | 325.00 | 27,426.70 | 1,531.15 | 20,691.65 | 49,974.50 |
| NET INCOME BEFORE TAXES | -65,469.04 | 57,810.37 | -16,283.30 | 86,855.93 | 119,245.18 | -15,881.26 | 166,277.88 |
| FEDERAL/ST TAXES | 0.00 | 0.00 | 0.00 | 0.00 | 4,242.52 | 567.16 | 4,809.68 |
| NET INCOME (LOSS) (MOR-1) | ($65,469.04) | $57,810.37 | ($16,283.30) | $86,855.93 | $115,002.66 | ($16,448.42) | $161,468.20 |

Accrual Accounting Required, Otherwise Footnote with Explanation.

* Footnote Mandatory.

** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

MOR-6

*Footnote Line 20: Distribution Payments to Investors

Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements.

Amounts listed for June and July 2015 are attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015

Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015

Revised 11/05/05

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $455,117.69 | $389,648.65 | $460,959.02 | $444,675.72 | $531,531.65 | $646,534.31 | $2,928,467.04 |
| RECEIPTS: | | | | | | | |
| 2. CASH SALES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4. LOANS & ADVANCES (attach list) - Altex 7-9-15 | 0.00 | 13,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,500.00 |
| 5. SALE OF ASSETS | 0.00 | 0.00 | 0.00 | 0.00 | 128,128.63 | 0.00 | 128,128.63 |
| 6. OTHER (attach list) | 18.11 | 73,022.56 | 28,152.83 | 224,287.68 | 90,054.70 | 74,011.05 | 489,546.93 |
| TOTAL RECEIPTS** | 18.11 | 86,522.56 | 28,152.83 | 224,287.68 | 218,183.33 | 74,011.05 | 631,175.56 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | 0.00 |
| DISBURSEMENTS: | | | | | | | |
| 7. NET PAYROLL | 26,387.24 | 11,824.61 | 0.00 | 0.00 | 0.00 | 0.00 | 38,211.85 |
| 8. PAYROLL TAXES PAID | 5,316.18 | 2,352.58 | 0.00 | 0.00 | 0.00 | 0.00 | 7,668.76 |
| 9. SALES, USE & OTHER TAXES PAID | 0.00 | 0.00 | 0.00 | 0.00 | 4,242.52 | 567.16 | 4,809.68 |
| 10. SECURED/RENTAL/LEASES | 8,913.77 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,913.77 |
| 11. UTILITIES & TELEPHONE | 2,299.35 | 1,001.00 | 4,258.30 | 566.15 | 430.49 | 0.00 | 8,555.29 |
| 12. INSURANCE | 5,461.36 | 0.00 | 11,325.65 | 3,295.36 | 3,295.36 | 0.00 | 23,377.73 |
| 13. INVENTORY PURCHASES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 14. VEHICLE EXPENSES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 0.00 | 0.00 | 28,517.18 | 106,003.54 | 93,681.15 | 69,190.66 | 297,392.53 |
| 17. ADMINISTRATIVE & SELLING | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 18. ADEQUATE PROTECTION PAYMENT(S) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 19. OTHER (attach list) | 2,109.25 | 34.00 | 10.00 | 27,566.70 | 230.33 | 20,052.47 | 50,002.75 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 50,487.15 | 15,212.19 | 44,111.13 | 137,431.75 | 101,879.85 | 89,810.29 | 438,932.36 |
| 20. PROFESSIONAL FEES | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 |
| 20. U.S. TRUSTEE FEES | | | 325.00 | 0.00 | 1,300.82 | 649.18 | 2,275.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | 0.00 | 0.00 | | 0.00 |
| TOTAL DISBURSEMENTS** | 65,487.15 | 15,212.19 | 44,436.13 | 137,431.75 | 103,180.67 | 90,459.47 | 456,207.36 |
| 22. NET CASH FLOW | -65,469.04 | 71,310.37 | -16,283.30 | 86,855.93 | 115,002.66 | -16,448.42 | 174,968.20 |
| 23. CASH - END OF MONTH (MOR-2) | $389,648.65 | $460,959.02 | $444,675.72 | $531,531.65 | $646,534.31 | $630,085.89 | $3,103,435.24 |

* Applies to individual debtors only

**MOR-7**

*Revised 11/08/05*

\* Applies to individual debtors only
\*\*Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Footnote Line 5: Real property located at 21022 Gathering Oaks sold per Order dated 10-5-15, Dkt. #197

Amounts listed for June and July 2015 are taken directly from Debtor's Schedules filed on 6-26-15 or reconciled/reconstructed bank statements.

Trustee has attempted to reconstruct Debtor's financial records, records remain incomplete for June and July 2015.

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

## CASH ACCOUNT RECONCILIATION
### MONTH OF    11/-11/30/15

| BANK NAME | RBFCU | RBFCU | RBFCU | RBFCU | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 192425469 | 192425656 | 192425759 | 192426073 | |
| ACCOUNT TYPE | *Screaming Eagle 4H* | *Screaming Eagle 6H* | *REVENUE* | *Buda Black Hawk #1* | *TOTAL* |
| BANK BALANCE | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| DEPOSITS IN TRANSIT | | | | | $0.00 |
| OUTSTANDING CHECKS | | | | | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| RECEIPTS* | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL    DEBTOR   MFR-2 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 11/08/05*

**ALL ACCOUNTS LISTED ABOVE ARE CLOSED AND REFLECT A ZERO BALANCE.**

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

## CASH ACCOUNT RECONCILIATION
### MONTH OF 11/1-11/30/15

| | Texas Bank and Trust | Texas Bank and Trust | Texas Bank and Trust | |
|---|---|---|---|---|
| BANK NAME | | | | |
| ACCOUNT NUMBER | 568686 | 568880 | 568872 | |
| ACCOUNT TYPE | Operating | Revenue | Production Operating | TOTAL |
| BANK BALANCE | 384,180.17 | 204,218.92 | 50,798.97 | $639,198.06 |
| DEPOSITS IN TRANSIT | 0.00 | 0.00 | 0.00 | $0.00 |
| OUTSTANDING CHECKS | 649.18 | 2,705.59 | 5,757.40 | $9,112.17 |
| ADJUSTED BANK BALANCE | $383,530.99 | $201,513.33 | $45,041.57 | $630,085.89 |
| BEGINNING CASH - PER BOOKS | 384,088.43 | 216,973.80 | 45,465.59 | $646,527.82 |
| RECEIPTS* | 85.25 | 73,925.80 | 0.00 | $74,011.05 |
| TRANSFERS BETWEEN ACCOUNTS | 6.49 | -69,333.80 | 69,333.80 | $6.49 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | 0.00 | 0.00 | 0.00 | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 649.18 | 20,052.47 | 69,757.82 | $90,459.47 |
| ENDING CASH - PER BOOKS | $383,630.99 | $201,513.33 | $45,041.57 | $630,085.89 |

MOR-8

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

Revised 11/08/05

## CASH ACCOUNT RECONCILIATION
## MONTH OF 11/1-11/30/015

| BANK NAME | RBFCU | RBFCU | RBFCU | RBFCU | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 192425160 | 192425834 | 192425142 | 192425357 | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | *SAVINGS* | *Screaming Eagle 3H* | *TOTAL* |
| BANK BALANCE | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| DEPOSITS IN TRANSIT | | | 0.00 | 0.00 | $0.00 |
| OUTSTANDING CHECKS | | | 0.00 | 0.00 | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | 0.00 | 0.00 | 6.49 | 0.00 | $6.49 |
| RECEIPTS* | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | 0.00 | 0.00 | -6.49 | 0.00 | ($6.49) |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

ALL ACCOUNTS LISTED ABOVE ARE CLOSED AND REFLECT A ZERO BALANCE.

Revised 11/08/05

CASE NAME: Primera Energy, LLC
CASE NUMBER: 15-51396-cag-11

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals. Also, for insiders, identify the type of compensation paid (e.g. salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH 6/3-6/30/15 | MONTH 7/1-7/31/15 | MONTH 8/1-8/31/15 | MONTH 9/1-9/30/15 | MONTH 10/1-10/31/15 | MONTH 11/1-11/30/15 |
|---|---|---|---|---|---|---|
| 1. Richard D. Lathrop - Order dated 6-17-15 | 3,000.00 | | | | | |
| 2. Dean W. Greer - Atty for Debtor | 12,000.00 | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL PROFESSIONALS (MOR-1) | $15,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

MOR-9

Revised 11/08/05

# Primera Energy, LLC
## Profit & Loss Detail
### November 2015

| Type | Date | Num | Name | Memo | Clr | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| **Income** | | | | | | | | |
| **Insurance Premium Refund** | | | | | | | | |
| Deposit | 1/25/2015 | 0013... | Humana, Inc. | Deposit | | TBT Operating... | 85.25 | 85.25 |
| **Total Insurance Premium Refund** | | | | | | | 85.25 | 85.25 |
| **Revenue Distribution Income** | | | | | | | | |
| Deposit | 11/20/2015 | | Oklahoma Petroleu... | Deposit | | Revenue Acco... | 4,772.94 | 4,772.94 |
| Deposit | 11/23/2015 | | Trafigura Trading, L... | Deposit | | Revenue Acco... | 16,216.56 | 20,989.50 |
| Deposit | 11/24/2015 | | Targa Midstream S... | Deposit | | Revenue Acco... | 29,851.02 | 50,840.52 |
| Deposit | 11/30/2015 | | Enerfin Field Servic... | Deposit | | Revenue Acco... | 23,085.28 | 73,925.80 |
| **Total Revenue Distribution Income** | | | | | | | 73,925.80 | 73,925.80 |
| **Total Income** | | | | | | | 74,011.05 | 74,011.05 |
| **Expense** | | | | | | | | |
| **Bank service charges** | | | | | | | | |
| Check | 11/20/2015 | | Texas Bank and Trust | Wiring charge | | Revenue Acco... | 5.00 | 5.00 |
| Check | 11/23/2015 | | Texas Bank and Trust | Wiring fee | | Revenue Acco... | 5.00 | 10.00 |
| **Total Bank service charges** | | | | | | | 10.00 | 10.00 |
| **Distribution Pmnt to Investors** | | | | | | | | |
| Check | 11/20/2015 | 1073 | Paul Bax | | | Revenue Acco... | 329.81 | 329.81 |
| Check | 11/20/2015 | 1074 | Roger Bax | | | Revenue Acco... | 329.81 | 659.62 |
| Check | 11/20/2015 | 1075 | Carolyn Beadle | | | Revenue Acco... | 37.96 | 697.58 |
| Check | 11/20/2015 | 1076 | Dorothy Beale | | | Revenue Acco... | 113.84 | 811.42 |
| Check | 11/20/2015 | 1077 | Laurie Beth Brought... | | | Revenue Acco... | 14.22 | 825.64 |
| Check | 11/20/2015 | 1078 | Joyce Chapek | | | Revenue Acco... | 56.91 | 882.55 |
| Check | 11/20/2015 | 1079 | Brian K. Dusek | | | Revenue Acco... | 582.87 | 1,465.42 |
| Check | 11/20/2015 | 1080 | Marty K. Dusek | | | Revenue Acco... | 582.87 | 2,048.29 |
| Check | 11/20/2015 | 1081 | Troy A. Dusek | | | Revenue Acco... | 582.87 | 2,631.16 |
| Check | 11/20/2015 | 1082 | Gary and Karen Fra... | | | Revenue Acco... | 1,635.29 | 4,266.45 |
| Check | 11/20/2015 | 1083 | Calvin Fuchs | | | Revenue Acco... | 37.96 | 4,304.41 |
| Check | 11/20/2015 | 1084 | Charles Lorenz Fuchs | | | Revenue Acco... | 18.97 | 4,323.38 |
| Check | 11/20/2015 | 1085 | Curtis Ray Fuchs | | | Revenue Acco... | 56.91 | 4,380.29 |
| Check | 11/20/2015 | 1086 | Floris Herman Fuchs | | | Revenue Acco... | 56.91 | 4,437.20 |
| Check | 11/20/2015 | 1087 | Dorothy A. Fuchs | | | Revenue Acco... | 18.97 | 4,456.17 |
| Check | 11/20/2015 | 1088 | Ken Fuchs | | | Revenue Acco... | 18.97 | 4,475.14 |
| Check | 11/20/2015 | 1089 | Monroe Herman Fu... | | | Revenue Acco... | 56.91 | 4,532.05 |
| Check | 11/20/2015 | 1090 | Ted John Fuchs | | | Revenue Acco... | 18.97 | 4,551.02 |
| Check | 11/20/2015 | 1091 | Don Glaser | | | Revenue Acco... | 37.96 | 4,588.98 |
| Check | 11/20/2015 | 1092 | Jeannette Glaser | | | Revenue Acco... | 113.84 | 4,702.82 |
| Check | 11/20/2015 | 1093 | Kay Glaser | | | Revenue Acco... | 37.96 | 4,740.78 |
| Check | 11/20/2015 | 1094 | Rebecca Lynn Hale | | | Revenue Acco... | 18.97 | 4,759.75 |
| Check | 11/20/2015 | 1095 | William D. & Linda ... | | | Revenue Acco... | 366.22 | 5,125.97 |
| Check | 11/20/2015 | 1096 | Evelyn Hause | | | Revenue Acco... | 37.96 | 5,163.93 |
| Check | 11/20/2015 | 1097 | Margie Frienzel Ho... | | | Revenue Acco... | 56.91 | 5,220.84 |
| Check | 11/20/2015 | 1098 | Laura S. Jeffrey | | | Revenue Acco... | 18.97 | 5,239.81 |
| Check | 11/20/2015 | 1099 | JK Equity Group, Inc. | | | Revenue Acco... | 1,724.63 | 6,964.44 |

# Primera Energy, LLC
## Profit & Loss Detail
### November 2015

| Type | Date | Num | Name | Memo | Clr | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| **Oil and Gas Well Expenses** | | | | | | | | |
| **Distribution Pmnt to Investors** | | | | | | | | |
| Check | 11/20/2015 | 1100 | Connie Malone | | | Revenue Acco... | 329.81 | 7,294.25 |
| Check | 11/20/2015 | 1101 | Janice E. Meier | | | Revenue Acco... | 37.96 | 7,332.21 |
| Check | 11/20/2015 | 1102 | Carol Schneider | | | Revenue Acco... | 14.22 | 7,346.43 |
| Check | 11/20/2015 | 1103 | Sharpless Royalty, Inc. | | | Revenue Acco... | 366.22 | 7,712.65 |
| Check | 11/20/2015 | 1104 | Dennis Wayne Tom... | | | Revenue Acco... | 14.22 | 7,726.87 |
| Check | 11/20/2015 | 1105 | John Michael Toma... | | | Revenue Acco... | 14.22 | 7,741.09 |
| Check | 11/20/2015 | 1106 | Joyce Ray Wood | | | Revenue Acco... | 6,830.38 | 14,571.47 |
| Check | 11/20/2015 | 1107 | Benton Hall | | | Revenue Acco... | 309.27 | 14,880.74 |
| Check | 11/20/2015 | 1108 | Jerry Hall | | | Revenue Acco... | 2,728.25 | 17,608.99 |
| Check | 11/20/2015 | 1109 | Carolyn Hall Young | | | Revenue Acco... | 2,433.48 | 20,042.47 |
| **Total Distribution Pmnt to Investors** | | | | | | | 20,042.47 | 20,042.47 |
| | | | | | | | | |
| Check | 11/16/2015 | 1028 | Brush Country Ener... | | | Production Op... | 889.82 | 889.82 |
| Check | 11/16/2015 | 1029 | Barry Fitts | | | Production Op... | 850.00 | 1,739.82 |
| Check | 11/16/2015 | 1030 | Bill Seger | | | Production Op... | 750.00 | 2,489.82 |
| Check | 11/16/2015 | 1031 | C.W. Lake & Associ... | | | Production Op... | 3,751.63 | 6,241.45 |
| Check | 11/16/2015 | 1032 | Gaertner Leasing | | | Production Op... | 4,891.40 | 11,132.85 |
| Check | 11/16/2015 | 1033 | J & P Transport, LLC | | | Production Op... | 1,404.00 | 12,536.85 |
| Check | 11/16/2015 | 1034 | J.R. Cotter, Inc. | | | Production Op... | 2,288.00 | 14,824.85 |
| Check | 11/16/2015 | 1035 | J-W Power Company | | | Production Op... | 6,383.66 | 21,208.51 |
| Check | 11/16/2015 | 1036 | OSC Energy | | | Production Op... | 11,529.00 | 32,737.51 |
| Check | 11/16/2015 | 1037 | Refinery Specialties... | | | Production Op... | 10,056.58 | 42,794.09 |
| Check | 11/16/2015 | 1038 | R.W. Dirks Petroleu... | | | Production Op... | 2,250.00 | 45,044.09 |
| Check | 11/16/2015 | 1039 | 24 Transport, Inc. | | | Production Op... | 866.00 | 45,910.09 |
| Check | 11/16/2015 | 1040 | Traton Engineering ... | | | Production Op... | 21,631.53 | 67,541.62 |
| Check | 11/16/2015 | 1041 | Tejas Lease Servic... | | | Production Op... | 1,649.04 | 69,190.66 |
| **Total Oil and Gas Well Expenses** | | | | | | | 69,190.66 | 69,190.66 |
| **Taxes** | | | | | | | | |
| **Severance Tax** | | | | | | | | |
| Check | 11/17/2015 | 1042 | Texas State Comptr... | | | Production Op... | 567.16 | 567.16 |
| **Total Severance Tax** | | | | | | | 567.16 | 567.16 |
| **Total Taxes** | | | | | | | 567.16 | 567.16 |
| **UST Quarterly Fees** | | | | | | | | |
| Check | 11/25/2015 | 1013 | U.S. Trustee | Adjustment fr... | | TBT Operating... | 649.18 | 649.18 |
| **Total UST Quarterly Fees** | | | | | | | 649.18 | 649.18 |
| **Total Expense** | | | | | | | 90,459.47 | 90,459.47 |
| **Net Ordinary Income** | | | | | | | -16,448.42 | -16,448.42 |
| **Net Income** | | | | | | | **-16,448.42** | **-16,448.42** |

3:38 PM

12/14/15

Accrual Basis

# Primera Energy, LLC
# Balance Sheet
## As of November 30, 2015

|  | Nov 30, 15 |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Checking/Savings | |
| Production Operating Account | 45,041.57 |
| Revenue Account | 201,513.33 |
| TBT Operating/General | 383,530.99 |
| **Total Checking/Savings** | 630,085.89 |
| Other Current Assets | |
| Close out of BBVA Compass acct | -305,217.95 |
| **Total Other Current Assets** | -305,217.95 |
| **Total Current Assets** | 324,867.94 |
| **TOTAL ASSETS** | **324,867.94** |
| **LIABILITIES & EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Other Current Liabilities | |
| Loan from Alfaro Energy, LLC | 23,500.00 |
| **Total Other Current Liabilities** | 23,500.00 |
| **Total Current Liabilities** | 23,500.00 |
| **Total Liabilities** | 23,500.00 |
| Equity | |
| Net Income | 301,367.94 |
| **Total Equity** | 301,367.94 |
| **TOTAL LIABILITIES & EQUITY** | **324,867.94** |

# McMULLEN COUNTY LIENS

| Creditor: | Amount: | Date Filed: |
|---|---|---|
| Baker Hughes | $405,314.27 | March 2, 2014 |
| C&S Wireline Services, LLC | $12,758.00 | June 2, 2014 |
| Platinum Energy Solutions | $1,030,723.60 | July 23, 2014 |
| Beck Bros., Inc. | $117,320.84 | September 8, 2014 |
| P&A Supply, Inc. | $109,512.54 | September 15, 2014 |
| Key Energy Services, LLC d/b/a Edge Oilfield Services | $82,516.50 | September 26, 2014 |
| Platinum Energy Solutions | $215,427.13 | October 22, 2014 |
| BCS Capital Services, Inc. General Partner of Diamond Energy Services, LP | $54,562.50 | May 26, 2015 |
| K-3 Resources d/b/a K-3 Services | $56,978.74 | July 7, 2014 |
| CC Forbes | $2,020.00 | February 9, 2015 |
| CC Forbes | $15,804.18 | February 9, 2015 |
| Texas Energy Services | $1,926.17 | February 23, 2015 |
| GFES Liquidation Trust | $651,276.47 | Nov. 7, 2013 |
| Unit Texas Drilling LLC | $379,962.30 | March 31, 2014 |
| ChemRock Technologies, LLC | $15,000 | Nov. 6, 2013 |
| TOTAL | $3,151,103.24 | |

ADMINISTRATIVE EXPENSE LIEN
(services provided post-petition but prior to appointment of Trustee)

| | | |
|---|---|---|
| OSC Energy, LLC | $3,787.94 | 9/2015 |

EXHIBIT
C

# GONZALES COUNTY LIENS

| Creditor: | Amount: | Date Filed: |
|---|---|---|
| Dynasty Enterprises | $199,000.00 | June 9, 2014 |
| Allied Oil & Gas | $232,249.04 | July 2, 2014 |
| Steve Kent Trucking | $90,992.45 | October 31, 2014 |
| OSC Energy, LLC | $31,043.94 | |
| K-3 Resources<br>d/b/a K-3 Services | $16,269.00 | June 24, 2014 |
| Unit Texas Drilling | $429,810.00 | July 1, 2014 |
| Key Energy Services<br>d/b/a Edge Oilfield Services | $63,899.50 | September 25, 2014 |
| Key Energy Services<br>d/b/a Edge Oilfield Services | $95,329.50 | October 15, 2014 |
| Trican Well Service | $1,087,481.21 | November 3, 2014 |
| Excalibur Rentals | $94,207.50 | November 10, 2014 |
| Elite Toilet Rental | $16,269.19 | November 10, 2014 |
| Ark-La-Tex Wireline Service | $86,760.26 | November 14, 2014 |
| Torqued Up Energy | $79,055.45 | November 17, 2014 |
| Mesa Southern Well Servicing | $7,340.46 | January 14, 2015 |
| Diamond Energy Services | $54,562.50 | May 26, 2015 |
| Cameron International Corp. | $26,152.64 | 7/29/15 |
| D & B Rental Services | $63,506.47 | 9/25/15 |
| OSC Energy, LLC | $80,094.18 | 8/15 |
| Newpark Drilling Fluids | $181,081.00 | 7/29/15 |
| Mesa Southern Well Services | $7,340.46 | 1/23/15 |



EXHIBIT

D

| | | |
|---|---|---|
| Midstar Energy, LP | $41,360.00 | 9/29/15 |
| Maverick Field Services, LLC | $45208.20 | 8/20/15 |
| Maverick Field Services, LLC | $48,417.50 | 8/20/15 |
| | | |
| TOTAL | $3,077,430.45 | |

LIEN FILED FOR ADMIN EXPENSE CLAIM
(Services post-petition but before Trustee Appointment)

| | | |
|---|---|---|
| OSC Energy, LLC | $31,043.94 | 9/15 |